IDA C. POWERS *vs.* EDWARD RADDING & others, trustees.
SARAH D. STONE *vs.* SAME.

Hampden.    September 25, 1916. — October 18, 1916.

Present: RUGG, C. J., LORING, BRALEY, & PIERCE, JJ.

*Equitable Restrictions. Tax,* Deed of land sold for taxes. *Words,* "One dwelling house."

In a suit in equity by the owner of a lot on the north side of Pearl Street in Springfield opposite the grounds of the United States Armory and Arsenal and west of what formerly was called "the new gate," against the owner of another lot similarly situated and forming part of the tract of land that formerly belonged to the original grantor of all the lots in the tract, to enjoin him from building an apartment house on his lot, it appeared that the deeds of the original grantor conveying the lots composing the tract contained the following provision or one substantially similar: "Provided and this deed is on condition that no building shall ever be erected or placed upon the premises nearer to Pearl street than twenty feet and no barn nearer to said street than six rods and that but one dwelling house shall be erected or placed thereon and that shall cost less than two thousand dollars or shall be less than two stories high and it is agreed that the other lots of the grantor westerly of the new gate shall when sold be subject to similar restrictions and be for the benefit of both parties hereto their heirs and assigns." All the deeds were recorded. The original grantor also mortgaged certain of the lots "subject to such restrictions as to placing buildings thereon as I have stipulated and made in my previous conveyances on record of lots on said street." *Held,* that the language of the restrictions and the situation of the lots opposite the grounds of the United States Armory and Arsenal with the reasonable probability that those grounds would remain open perpetually showed that the words "that but one dwelling house shall be erected or placed

thereon" referred to a dwelling to be used by one family and not merely to the form of structure, and that the erection of an apartment house must be enjoined.

A deed given in pursuance of a sale for non-payment of taxes becomes void if not recorded within thirty days from the day of sale as was required by Gen. Sts. c. 12, § 35, and as now is required by St. 1909, c. 490, Part II, § 44, as amended by St. 1911, c. 370, and St. 1915, c. 237, § 1.

It is well settled that restrictive covenants in deeds, whether conferring benefits or imposing burdens, will pass to and bind the grantees and assignees of the respective parties who had actual or constructive notice of the restriction, and that the record of the deed in the registry of deeds is constructive notice.

In the case above described, it appeared that the original grantor included in the above mentioned mortgage made by him four of the lots as one parcel and that at a foreclosure sale under a power in the mortgage the mortgagee sold each of the four lots separately, one of which passed by mesne conveyances to the defendant. *Held,* that, under the covenants in the deeds and the mortgage above described, the restriction as to building only one dwelling house applied to each of the four lots sold by the mortgagee under the power of sale.

TWO BILLS IN EQUITY, filed in the Superior Court on June 5, 1916, by the respective owners of parcels of land on the northerly side of Pearl Street in Springfield, known as No. 122 and No. 176 Pearl Street, against Edward Radding of Springfield, the owner of a parcel of land on the northerly side of Pearl Street, known as No. 168 Pearl Street, and the defendants Cunliffe and Ford as trustees of a voluntary association called the Mutual Mortgage Investors and as such trustees the owners and holders of a mortgage of the parcel known as 168 Pearl Street, which was made by the defendant Radding on April 25, 1916, praying that the defendants might be enjoined from constructing an apartment house on the parcel of land known as 168 Pearl Street.

The cases came on to be heard together before *Hamilton, J.,* who reserved them upon the pleadings and an agreed statement of facts for determination by the full court. The material facts are stated in the opinion. Where quotation marks are used the passage quoted is taken from the agreed statement of facts.

A copy of a part of a plan which was attached to the record in this court is printed on page 112.

The cases were submitted on briefs.

*C. H. Beckwith,* for the plaintiffs.

*R. W. Ellis, E. H. Brewster & T. W. Ellis,* for the defendants.

PIERCE, J. On September 4, 1863, one Bliss was the owner of a tract of land on the northerly side of Pearl Street in the city of Springfield. He had acquired his title in 1832 to a larger tract

out of which in 1856 he had conveyed to the United States between four and five acres with the understanding that the United States intended to open and construct streets on the westerly and northerly side of the granted premises and to which the grantor reserved to "myself my heirs and assigns of such [that is of the grantor's] adjoining lands forever, the free right to use the said streets for travel after they shall be so made, with the right to abut upon the same and to enter and connect with them other streets from and across my adjoining land before mentioned, but so as not to interfere with the grades of the United States roads hereafter to be constructed." The United States opened and constructed the streets; the lands conveyed adjoined and became a part of

the grounds of the United States Armory and Arsenal which have been there since the eighteenth century.

"No buildings have been erected on the said tract since the United States so acquired the land and the premises together with other lands adjoining the same to the south have been kept open and have been carefully and artistically cared for." Bliss had also conveyed of the tract in 1848 and in February and April, 1863, lots at the northerly and southerly corners of Spring and Pearl streets.

On September 4, 1863, there remained to him of his original purchase the land on the northerly side of Pearl Street, that is the tract of land thereafter designated as the lots numbered on Pearl Street 116, 122, 138, 150, 156, 162, 168 and 176.

The first of these lots to be sold was 122. The deed was dated September 4, 1863, was duly recorded and contained the following provision: "Provided that no building shall be erected thereon

nearer to Pearl Street than twenty feet and no barn nearer to said street, than six rods and that but one dwelling house shall be erected thereon, or that shall cost less than two thousand dollars or less than two stories high. And it is agreed that the other lots of the grantor on Pearl Street shall be held subject to a similar restriction, which shall be for the benefit of the grantee his heirs and assigns."

Upon the death of the grantee, Brown, the premises descended to his heirs and thereafter by mesne conveyances the title passed to the plaintiff Ida C. Powers.

The next parcel was sold in November, 1863, and was land lying easterly of lot 122 and westerly of lot 138, which tract was in 1868 divided and added to lots 122 and 138 and has since remained a part of these parcels. The deed was duly recorded and contained the following provision: "Provided and this deed is on condition that no building shall ever be erected or placed upon the premises nearer to Pearl Street than twenty feet and no barn nearer to said street than six rods and that but one dwelling house shall be erected or placed thereon and that shall cost less than two thousand dollars or shall be less than two stories high and it is agreed that the other lots of the grantor westerly of the new gate shall when sold be subject to similar restrictions and be for the benefit of both parties hereto their heirs and assigns."

The chief·importance of this provision is that it marks and defines the territory which the grantor and grantee agreed should enjoy the benefit and suffer the burden of the restriction as "the other lots of the grantor westerly of the new gate."

The next parcels sold were 116 in 1864, 138 in 1866 and 150 in 1869. Each deed duly recorded contained the restriction among others "that but one dwelling shall be erected thereon, and none that costs less than two thousand dollars, or is less than two stories high."

On March 13, 1872, the grantor mortgaged the remaining lots, 156, 162, 168 and 176, by deed with power of sale and containing the following provision: "Subject to such rights of drainage or aqueduct as any of my assigns may have now in said premises and subject to such restrictions as to placing buildings thereon as I have stipulated and made in my previous conveyances on record of lots on said street."

The mortgage was later duly foreclosed by sale, and by mesne conveyances the parcel above referred to as No. 156 became the property of Vrylena McClean, the property above referred to as No. 162 became the property of the defendant Edward Radding, the parcel designated above as No. 168 became the property of the defendant Edward Radding and the parcel designated as No. 176 became the property of the plaintiff Stone.

We think the proximity of the property to the grounds of the United States Armory and Arsenal with the reasonable probability that they would perpetually remain open and be carefully and artistically cared for, the provisions that no barn shall be nearer to the street than six rods, that but one dwelling shall be erected on any one lot and that none shall be erected nearer to the street than twenty feet nor cost less than $2,000, indicate an unmistakable general scheme and purpose to create a residential section which should benefit the owners of each lot and give them as owners of homes good neighbors and clean and beautiful and artistic surroundings.

We are also of opinion in view of the language of the deeds themselves in connection with the attending circumstances that the deeds were executed, delivered and received with the intention that the words "but one dwelling house shall be erected thereon" should define the use to which that dwelling should be put and not merely the form of a structure.

So construed the restrictions do not permit of more than one dwelling under a single roof or the erection of a building designed to include more than one apartment or flat. See *Gillis* v. *Bailey,* 21 N. H. 149; *Rogers* v. *Hosegood,* 69 L. J. Ch. (N. S.) 59; *Harris* v. *Roraback,* 137 Mich. 292.

The defendant Radding derives his title by mesne conveyances from one Hawkes who purchased and received lot 168 at a sale under a power of sale contained in a mortgage deed to the Springfield Institution for Savings on October 22, 1879. This mortgage conveyed the premises "subject to such restrictions as to placing buildings thereon as were made by said Bliss in conveyances previous to and on record before said mortgage" of lots in said street.

The sale of lots 156, 162, 168 and 176 to one Lee, who afterwards acquired the title of Hawkes, by the city of Springfield in in 1878 for taxes duly assessed for the year 1877 conveyed no

title; because the provisions of Gen. Sts. c. 12, § 35,* as to record-
ing the deed were not followed.

It is well settled that restrictive agreements and covenants of
deeds whether benefits reserved or burdens imposed will pass to
and bind the respective assignees with actual or constructive
notice. *Parker* v. *Nightingale,* 6 Allen, 341. *Whitney* v. *Union
Railway,* 11 Gray, 359. *Hano* v. *Bigelow,* 155 Mass. 341, 343.
*Stewart* v. *Finkelstone,* 206 Mass. 28. *Tulk* v. *Moxhay,* 2 Phillips,
774.

The defendants contend that, as the mesne conveyances to the
defendant Radding were without restrictions and as lots 156,
162, 168 and 176 were not divided when mortgaged, the mortgagor,
Bliss, "did not intend and could not reasonably be held to have
intended to restrict the mortgaged tract against more than one
dwelling house."

An examination of the records of the conveyances of Bliss would
have disclosed the agreement contained in the deed to Brown of
lot 122 and in that to Clyde (of parts of lots 122 and 138) that the
other lots, that is to say the parcels that shall from time to time
be carved out of the remaining lot of the grantor westerly of the
new gate, "shall when sold be subject to similar restrictions for
the benefit of both parties hereto their heirs and assigns."

The purchaser at the mortgage sale took subject to the agree-
ments of the mortgagor which appeared of record and under the
power. This was sufficient notice. *Peck* v. *Conway,* 119 Mass.
546, 549.

The fact, that the mortgagee under the power carved out and
sold separately four lots from the single lot mortgaged, could not
free the individual lots then conveyed from the burden of the
restrictions in the hands of a purchaser with notice of the agree-
ment of Bliss. *King* v. *Dickeson,* L. R. 40 Ch. 596.

These conveyances could stand no more free from the burden
of the restrictive agreement than they would have stood had they
been made directly by Bliss.

It is to be observed that no apartment house has ever been

* That section provided, "Such deed to be valid shall be recorded within
thirty days from the day of sale." Substantially the same provision is con-
tained in St. 1909, c. 490, Part II, § 44, as amended by St. 1911, c. 370,
and St. 1915, c. 237, § 1.

constructed within the restricted district; that a dwelling house occupied by one family has been built on each lot and that no change in the locality has arisen to make the section less desirable as a place of residence. These facts distinguish the facts of the cases at bar from those in *Jackson* v. *Stevenson,* 156 Mass. 496.

It follows that the plaintiffs are entitled to a writ of injunction perpetually enjoining and restraining the defendants and each of them, their servants and agents from constructing, building, erecting and maintaining a building which shall be other than a dwelling house for one family.

*So ordered.*

