[Civil No. 3122. Filed April 9, 1932.]

[9 Pac. (2d) 1007.]

MRS. S. AINSWORTH, Appellant, v. MRS. MARTHA M. ELDER, Appellee.

Miss S. V. Ross, for Appellant.

Messrs. Cunningham, Carson & Gibbons, for Appellee.

LOCKWOOD, J.—Mrs. Martha M. Elder, hereinafter called plaintiff, brought suit against Mrs. S. Ainsworth, hereinafter called defendant, seeking to enjoin defendant against constructing or maintaining a certain so-called "duplex" building, designed for and suitable for use as a residence for two families, on lot 3 of block 16, plat B, F. Q. Story addition to the city of Phoenix. A permanent injunction was issued, which reads as follows:

"It is ordered, adjudged and decreed that the defendant, her agents, servants, employees, grantees, and assigns be forever enjoined from constructing that certain 'duplex' on Lot 3, Block 16, F. Q. Story Addition, Plat B, to the City of Phoenix; that they be

enjoined from maintaining or continuing the maintenance of said duplex; that defendant remove the duplex or change its construction to make it a one family residence within a reasonable time; that the defendant, her assigns, lessees, or grantees be permanently enjoined from ever designing or using said building after its alteration as a residence for more than one family living separate and apart and that the defendant pay plaintiff her costs herein expended. This injunction, though permanent so long as the character of the above named plat remains unchanged, may be modified on sufficient showing that the character of the plat has changed so as to make it inequitable to further observe and uphold the building restrictions therein.''

From such judgment this appeal is taken.

The facts in the case are not questioned, and may be stated as follows: Plaintiff herein is the owner of lot 4 in block 16, plat B of the F. Q. Story addition to the city of Phoenix, while defendant is the owner of lot 3, in block 16, of the same tract. After April, 1920, when the addition was laid out and subdivided, the then owners placed in all deeds issued to purchasers of the lots the following covenants:

''It is expressly understood and agreed by and between the Grantor and Grantee herein, and this deed is given and is accepted upon the express condition that the said land herein described is conveyed and is accepted subject to the following covenants and restrictions, and that such covenants and restrictions are made for the benefit of the lands herein described and shall inure to the benefit of and be binding upon the owners of all other lands and lots in said F. Q. Story Addition, Plat B, to the City of Phoenix.

''4. No building except residences, garages, barns and necessary outbuildings shall ever be erected, placed or permitted thereon.''

''3. No residence costing less than Five Thousand dollars shall ever be erected, placed or permitted on any of said lots.''

"6. Only one residence shall be erected on any one of said lots."

"It being expressly agreed and understood that the said F. Q. Story Addition, Plat B, has been platted and laid out as a choice and attractive residence district, and the foregoing covenants and restrictions run with the land and upon breach of any one thereof the property shall revert to the *cestui que trust* of the Grantor, his heirs or assigns; and that if there shall be a violation of any of said covenants or restrictions the Grantor herein or anyone owning land in said tract may bring an appropriate action in the proper court to enjoin or restrain said violation."

Defendant commenced the erection of a so-called "duplex" on her lot, which may be defined as a building under one roof and in general exterior appearance like the ordinary single family dwelling-house or residence, but arranged and intended for occupancy by two separate and independent families. The sole question for our consideration is whether the erection or occupancy of a building of this nature is a violation of the covenants set up in the deed aforesaid.

Most of the early decisions construing covenants restrictive of the use of land have been based on the fundamental theory that an owner of realty was entitled to deal with it as he pleased, and therefore any restrictions on its use were most rigidly and strictly construed, and indeed, the courts frequently exercised considerable ingenuity in limiting their application. As time has gone on, however, it is realized that, especially in a crowded community, the manner of use of one piece of land directly and greatly affects the value and use of adjoining and near-by premises, and the later cases incline towards giving more and more weight to the doctrine of *sic utere tuo ut alienum non laedas*. For this reason it is now generally held courts should consider not only the strict and technical meaning of the particular words of

restriction, but also the surrounding circumstances, the general purpose of the restrictions, and the manner in which they have been interpreted by the property owners.

The real dispute is over the meaning of the phrase "one residence," found in subdivision 6 of the covenant above set forth. Webster's New International Dictionary defines "residence" as "the house where one's home is; a dwelling-house; often, one of a superior or pretentious character."

And synonyms are given as "dwelling" or "mansion." "Dwelling-house" is defined as "a house occupied as a residence in distinction from a store, office or other building."

We think from these definitions and from our own knowledge of the common usage of the two words that they are considered as practically interchangeable, and that a decision which determines the meaning of one is in point in considering the other.

A similar question to the one in issue has been before the courts of a number of the states, and we find therein what seems to be an irreconcilable difference of opinion. The reasoning of the authorities which support the position of defendant is well expressed in the case of *McMurtry* v. *Phillips Inv. Co.,* 103 Ky. 308, 40 L. R. A. 489, 45 S. W. 96. One of the conditions in the deed therein reads as follows:

"It is a condition of this deed that the property herein conveyed shall be used for residence purposes only, and that, in erecting a residence therein, it shall be built of brick or stone, and shall cost not less then seven thousand dollars, and that in erecting said residence the front wall thereof shall be not less than thirty-five feet back from the sidewalk of St. James' Court."

And the court says:

" . . . It is contended that the language of the restriction conveys the idea of a single residence, for

a single family, or, at any rate, excludes the idea of a number of residences under the same roof or in the same house. We think, however, that to give the language used this meaning would be to extend its scope beyond the expressed intention of the parties. The purposes for which the houses to be erected on the court were to be used were 'residence purposes only'; and as the house in controversy is to be constructed for such purpose only, and is not to be used for any other purpose, we do not think its construction is at all prohibited by this restriction clause. If the intention had been to permit the erection of only segregated private residences, the instrument would doubtless have so provided.''

Apparently the court assumes that all buildings should be divided into two classes, dependent upon their use; one to live in, and the other to carry on business in, and that the word ''residence'' as used in a restriction goes no further than to prevent the use of the structure for business purposes. See, also, to the same general effect, *Sonn et al.* v. *Heilberg,* 38 App. Div. 515, 56 N. Y. Supp. 341; *Courtney et al.* v. *Hunter,* 159 Ga. 321, 125 S. E. 714; *Hamm* v. *Wilson,* 169 Ga. 570, 151 S. E. 11; *Johnson* v. *Jones,* 244 Pa. 386, 52 L. R. A. (N. S.) 325, 90 Atl. 649; *Struck* v. *Kohler,* 187 Ky. 517, 219 S. W. 435; *Re Robinson,* 25 Ont. L. R. 286; *Hutchinson* v. *Ulrich,* 145 Ill. 336, 21 L. R. A. 391, 34 N. E. 556.

One of the earliest cases taking the contrary view is that of *Gillis* v. *Bailey,* 21 N. H. 149. Therein the restrictive language was ''a single dwelling-house,'' and the court construed such language to mean a dwelling-house intended and calculated for the convenience and accommodation of one family only, and suitably constructed for such a purpose. In the case of *Schadt* v. *Brill,* 173 Mich. 647, 45 L. R. A. (N. S.) 726, 139 N. W. 878, the restrictive language was that:

''No store, factory, or building, other than a dwelling house with the usual appurtenances thereto,

shall be erected upon the above-described premises, and that said premises shall be used for residence purposes only. . . . ''

Defendant therein attempted to build a duplex of practically the same character as that involved in the present action, and the court said as follows:

''If 'a dwelling house,' in the connection it is used, does not mean a house designed and constructed for the dwelling of a single family on each lot, a triple or quadruple house on each lot, designed for three or four families, if under one roof and with a single entrance, would be a departure from a single dwelling only in the degree of physical difference, and not in violation of any legal restriction. Furthermore, if the restrictions do not prohibit a double house, what legal purpose is served in feigning the external appearance of a single house by a single entrance and the style of architecture adopted? Either this restriction means one dwelling for a single family on each lot, or there is no restriction except one house on each lot, designed to be a dwelling for as many families or persons as the owner sees fit, to cost not less than $5,000. A 'dwelling house' is 'the house in which a man lives with his family, a residence; the apartment or building, or group of buildings, occupied by a family as a place of residence.' Black's Law Dictionary. Literally taken, this would seem to make each apartment in an apartment house 'a dwelling house.' Taking the restriction in its common, ordinary, and popular sense, applying the legal definition of 'a dwelling house,' and construing it in the light of the surrounding conditions and circumstances as proven, we conclude it was the intention to restrict buildings on each lot to a single dwelling, with its appurtenances.''

In the case of *Mayes* v. *Hale,* 82 Fla. 35, 89 South. 364, the restriction was that the lot was to be used ''for residential purposes only, and only one residence is to be erected on each lot.''

The court held as follows:

"Considered in connection with the context, the covenant that only one residence is to be erected on each lot was clearly intended to confine the erections of residence buildings on the lots to residences for the usual collective family purposes, and not to apartment houses to be let to several separate families."

Supporting the same general principles are the cases of *Brigham* v. *H. G. Mulock Co.,* 74 N. J. Eq. 287, 70 Atl. 185; *Harris* v. *Roraback,* 137 Mich. 292, 109 Am. St. Rep. 681, 100 N. W. 391; *Thompson* v. *Langan,* 172 Mo. App. 64, 154 S. W. 808; *Sanders* v. *Dixon,* 114 Mo. App. 229, 89 S. W. 577; *Powers* v. *Radding et al.,* 225 Mass. 110, 113 N. E. 782; *Green* v. *Gerner,* (Tex. Civ. App.) 283 S. W. 615.

It is a well-known fact of which this court cannot but take judicial notice, that many families desire to own homes for residence purposes which shall be distinct and separate from residences occupied by other families, and that there is a strong and growing tendency everywhere to set aside special districts to be used exclusively for such purposes. The various zoning ordinances being adopted so numerously all over the country recognize clearly that the old system of two classes only—one for living, the other for business purposes—is insufficient to meet the present situation, and most of these ordinances recognize now four fundamental divisions, to wit, manufacturing and wholesale business; retail business; community residence (which generally includes apartment houses, lodging-houses and duplexes), and strictly residence, which is invariably limited to single private dwelling-houses, planned for and occupied by one family only. While special situations call for modifications of and exceptions to these classifications, the general principle prevails, and we think it is a commonly known and accepted fact that the term "residence district" is understood, in the absence of some limitation in

the particular case, express or implied, to apply to districts where only single private family residences or dwelling-houses are permitted, and that a building in such a district which is intended for and allows occupancy by more than one family is not within the common acceptation of the words "one residence."

We must presume that language carries the usual significance of the words in the locality where they are used, whether it be in ordinary conversation or legal documents, unless the contrary clearly appears to be true. Such being the case, we are of the opinion that the deed in the case at bar prohibits the erection of a building for any purpose except occupancy by a single family for residence purposes, and that a duplex or any other structure intended or arranged to be used for residence purposes by more than one family is prohibited.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.