CHARNITA, INC., a corporation and Charles G. Rist, Individually and as an officer of said corporation, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 72-1707.

United States Court of Appeals, Third Circuit.

Argued May 3, 1973.

Decided May 31, 1973.

As Amended June 25, 1973.

Leroy W. Preston, John J. O'Connor, Jr., Baltimore, Md., for petitioners.

Ronald M. Dietrich, Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Washington, D. C., Karl H. Buschmann, Federal Trade Commission, Washington, D. C., for respondent.

Before JAMES HUNTER, III, and WEIS, Circuit Judges, and SCALERA, District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The Federal Trade Commission has issued an order finding that there were violations of the Truth in Lending Act by petitioner Charnita, Inc. and requiring it to give notice to certain of its customers of an opportunity to rescind their transactions.

Charnita, Inc. is a Pennsylvania corporation engaged in the business of selling land for recreational and residential home sites in that state. Many of the sales are credit transactions and in the period from July 1, 1969 to March, 1970 involved the use of the "judgment note" which is permitted by the law of Pennsylvania. This type of promissory note enables the holder to enter judgment in the state court without notice or opportunity to be heard being extended to the maker. Filing of the note with the prothonotary of the court immediately creates a lien on all real estate in the county.

In the period after November, 1970, the promissory note was altered to state that real estate to be used as a principal residence of the maker was exempted from the lien of the confessed judgment, but Charnita then instituted the practice of retaining the deed to the lot in its possession until after the purchaser had made four or more payments.

The FTC found that various violations of the Truth in Lending Act [1] had occurred which were not seriously questioned by appellant. The Commission further determined that the judgment notes given by the purchasers in the period from July 1, 1969 to March, 1970 and the withholding of the deeds by Charnita constituted "security interests" within the scope of the Act and interpretative regulations. The appellant was therefore required to take appropriate steps to advise eligible purchasers of the right to rescind granted by § 125 of the Act, 15 U.S.C. § 1635(a). [2]

The principal issues to be decided on this appeal are whether the determinations of the existence of "security interests" were properly made.

The Act authorized the Board of Governors of the Federal Reserve System to enact appropriate regulations to carry out the purposes of the statute. The authorization was quite broad and provided, "These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith." [3]

The Supreme Court in Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed. 318 (1973), recognizing the wide scope of authority granted, noted that Congress was aware that there could be evasion of the requirements of the Act and that accordingly the Board was given the power to prevent noncompliance by the use of varied and ingenious subterfuges. The Court stated the standard to be "Given that some remedial measure was authorized, the question remaining is whether the measure chosen is reasonably related to its objectives." (page 371, 93 S.Ct. page 1661).

The Act itself does not set out the meaning of "security interest" but the Board supplied the definition in its regulation, 12 CFR § 226.2(z), where we read the following:

"'Security interest' and 'security' means any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interest under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation."

By way of further explanation, in 12 CFR § 226.202(a) the Board said:

"Under § 226.2(z) 'security interest' is defined to include confessed liens whether or not recorded * * * (b) In some of the States, confession of judgment clauses or cognovit provi-

1. 15 U.S.C. § 1601 et seq.

2. "(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this

part, whichever is later by notifying the creditor, in accordance with regulations of the Board of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section."

3. 15 U.S.C. § 1604.

sions are lawful and make it possible for the holder of an obligation containing such clause or provision to record a lien on property of the obligor simply by recordation entry of judgment; the obligor is afforded no opportunity to enter a defense against such action prior to entry of the judgment. (c) * * * such clauses and provisions in those States are security interests under § 226.2(z) and for the purposes of §§ 226 * * *.9."

Section 226.9 sets forth the requirements for rescission granted by § 125.[4]

█ Clearly then the regulations do cover the judgment note transactions in which Charnita participated.

█ We hold that the promulgation of the regulation was a reasonable exercise of the authority granted by the statute and is consonant with the discretion granted by Congress to effectuate the purposes of the Act. *See* Mourning v. Family Publication Service, Inc., *supra*; N. C. Freed Company, Inc. v. Board of Governors of Federal Reserve System and Federal Trade Commission, 473 F.2d 1210 (2nd Cir. 1973); Gardner and North Roofing and Siding Corp. v. Board of Governors of Federal Reserve System, 150 U.S.App.D.C. 329, 464 F.2d 838 (1972); *cf.* Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453 (9th Cir. 1972). As the Court said in the *Freed* case:

"The challenged regulation constitutes a clarification, and not an improper extension, of the statute and it therefore does not exceed the bounds of the mandate given the Board by Congress. Since the regulation is clearly consistent with the legislative purpose, it may not be overturned." (473 F.2d page 1217)

█ We have little difficulty, also, in finding that the insistence of the seller that it keep possession of the deed until a certain number of payments have been made by the buyer constitutes a security interest within the meaning of the Act and the regulations. Retention of title or its indicia is one of the classic methods of protection, utilized by sellers for centuries to pressure purchasers to comply with their commitments. Charnita's retention of the deed prevented its recordation by the purchaser and thus deprived him of the very valuable rights of the holder of record title.

█ Additionally, however, petitioner posits the proposition that it is entitled to the exemption granted by 15 U.S.C. § 1635(e):

"This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling."

We do not accept Charnita's position. The language in the statute obviously applies only to a "dwelling" and not to the mere sale of land. And as the legislative history reveals, this section was intended to apply to a first mortgage on the sale of a residence. *See* 114 Congressional Record 14388 (1968). We concur with the finding of the FTC that the practices here do not fall within the exemption.

The Commission ordered Charnita to offer the right of rescission by a two-step process which was designed to, first identify those parties who had acquired the real estate for use or expectation of use as the principal place of residence and are thus covered by § 125, and then, extend to only those eligible persons the opportunity to rescind.

Since this provision of the Act grants the purchaser the right to rescind until midnight of the third business day following the consummation of the transaction or until the required disclosures are made to the buyer, the Board reasoned that until such time as the seller complies with the requirement of furnishing information to its customer, the violation is a continuing one.

█ Charnita contends that the order is in effect punishment for past misdeeds and hence beyond the authori-

4. 15 U.S.C. § 1635(a).

**688**

ty of the FTC. However, in our view, the construction of the statute by the Board and the remedial action prescribed are not unreasonable and enforcement is required.[5] We find that the corrective measures devised meet the test set out in Windsor Distributing Co. v. Federal Trade Commission, 437 F.2d 443 (3rd Cir. 1971), as being within the area of the Commission's discretion in framing relief appropriate to the practices found to exist. We do not think the notification requirements imposed upon Charnita are unduly burdensome but conclude that they represent a reasonable exercise of the Commission's authority to redress continuing violations.

The order of the Commission will be affirmed and will be enforced in its entirety.

5. In Wachtel v. West, 476 F.2d 1062 (6th Cir. 1973), the Court said, "The provisions with respect to the right of rescission seem to contemplate a continuing violation when the disclosures are not made, but such is not the case when damages are sought."