611 P.2d 955

Russell KOVALIK and Nancy Kovalik,
husband and wife,
Plaintiffs-Appellees,

v.

DELTA INVESTMENT CORPORATION,
Defendant-Appellant (two cases).

Nos. 1 CA–CIV 4460, 1 CA–CIV 4786.

Court of Appeals of Arizona,
Division 1,
Department B.

May 20, 1980.

John Friedeman, Scottsdale, for plaintiffs-appellees.

Dan A. Sinema, Tucson, for defendant-appellant.

## OPINION

EUBANK, Presiding Judge.

Appellant Delta Investment Corporation questions whether its contract with Russell and Nancy Kovalik (appellees) was subject to the Federal Truth In Lending Act (15 U.S.C. § 1635), and asks us to determine the proper remedy for a creditor's failure to comply with the section.

Appellees entered into a written contract to purchase a lot in appellant's mobile home park on April 24, 1974. They made a down payment and the balance was due in monthly installments. Appellant retained a lien against the lot, and title was to pass to appellees only upon payment of the full purchase price. After attempting unsuccessfully to sell the lot in November 1974, appellees served a notice of rescission on appellant on January 13, 1975. However, appellees sent and appellant received a monthly payment check, subsequent to the notice of rescission, on January 27. This was the last payment appellees made. On February 13, 1975, appellees' attorney sent appellant a letter affirming the notice of rescission. Despite these communications, appellant never returned appellees' contract payments, and never terminated its security interest in the lot. Instead, it forfeited appellees' contract rights by a Notice of Election and Declaration of Forfeiture dated April 5, 1975.

In June 1975, appellees filed a complaint against appellant in the Superior Court. Counts I and II allege that appellant violated 15 U.S.C. § 1635 by failing to return appellees' contract payments, and by forfeiting their interest in the lot.[1] On May

---

1. 15 U.S.C. § 1635 provides, in relevant part:
   (a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The

30, 1978, the trial court granted appellees' motion for partial summary judgment on Counts I and II. The judgment states that the following material facts are uncontroverted:

1. Defendant [appellant] failed to give notice to plaintiff of the right to rescind the transaction as described in 12 C.F.R. 226.9(b).

2. Defendants' failure to comply with the provisions of 12 C.F.R. 226.9(d) upon receiving notice of plaintiffs' desire to cancel the transaction.

3. Defendant was a creditor as defined in 15 U.S.C. 1602(f).

4. Plaintiffs intended to use the real property as a principal residence.

*See* Rule 56(d), Rules of Civil Procedure, 16 A.R.S. The judgment reserved the question of damages for trial.

During the trial to the court on damages, the parties stipulated that appellees had paid $2,523.55 for the lot, and that its fair market value was $9,395. In the December 19, 1978 judgment, the trial court awarded appellees both amounts as damages, plus interest and costs. Appellant appealed separately from each judgment and they have been consolidated in this Court.

The Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, gives certain debtors a right to rescind within three days after the sale, and requires the creditor to notify the debtor of that right. 15 U.S.C. § 1635. The

right in this situation arises only in sales where the creditor obtains a security interest ". . . in any real property which is used or is expected to be used as the residence of the person to whom credit is extended . . . ." 15 U.S.C. § 1635(a). 12 C.F.R. § 226.9(a) further limits the right to the situation where the security interest is against the debtor's principal residence.

Appellant first argues that the trial court erred in granting appellees summary judgment because whether the Kovaliks intended to use the lot as their principal residence is a genuine issue of material fact. Summary judgment is proper only if the record contains no disputed issues of material fact, only one inference can reasonably be drawn from the facts, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Rules of Civil Procedure, 16 A.R.S.; *Livingston v. Citizen's Utility, Inc.*, 107 Ariz. 62, 64, 481 P.2d 855, 857 (1971).

■ When read in a light most favorable to appellant, the record before the trial court showed that when the parties executed the contract the lot was vacant; that the Kovaliks subsequently purchased a mobile home, but never moved it onto the lot, but in fact moved it onto another lot; that the Kovaliks inquired about reselling the property before entering the contract, and did try to sell it approximately eight months after executing the contract; and

creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the

creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

\* \* \* \* \* \*

(e) This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling.

that the Kovaliks never told appellant that they intended to use the lot as their residence. The record also contains the Kovaliks' affidavit which states that they intended to make the lot their principal residence, and the contract with appellant which provides that the lot only be used for a mobile home. In our opinion, the record supports more than one inference concerning the Kovaliks' intent to use the lot as their principal residence. The partial summary judgment for appellees is therefore reversed.

■ Because we are reversing the summary judgment we must answer two legal arguments made by appellant. The first is whether the transaction *sub judice* is exempt from the Act under 15 U.S.C. § 1635(e). *See* footnote 1, *supra.* The subsection exempts the creation or retention of a first lien against a dwelling in order to finance the acquisition of the dwelling. Appellant contends that the mobile home lot is a dwelling for purposes of the Act. The court in *Charnita Inc. v. Federal Trade Commission*, 479 F.2d 684 (3rd Cir. 1973) addressed this issue. It held that a lot is not a dwelling, and that a transaction which creates a first lien against a mere parcel of land is not exempt from the Act. *Id.* at 687. This conclusion is supported by the legislative history of 15 U.S.C. § 1635(e), which, in part, states:

> Any credit transaction which involves a security interest in property must be clearly explained to the consumer as involving a mortgage or lien; any such transaction involving the consumer's residence—*other than in a purchase-money first mortgage for the acquisition of the home*—carries a 3-day cancellation right. (Emphasis added)

114 Congressional Record 14388 (1968).

The foregoing conforms with the definition of a dwelling set forth in Regulation Z, 12 C.F.R. § 226.2(p):

> "Dwelling" means a residential-type structure which is real property and contains one or more family housing units, or a residential condominium unit wherever situated.

We agree with *Charnita* that a lot is not a dwelling within the meaning of the Act and that an agreement which creates a first lien against a mobile home lot is subject to the Act.

Alternatively, appellant argues that if the lot is not a dwelling, it is not a residence, and that therefore the Act does not apply to the Kovalik transaction. As noted before, the lot is in a residential trailer park, and contains the necessary hookups for installing a mobile home. By merely moving a mobile home onto the lot, one could use it as a residence. 15 U.S.C. § 1635(a) (*see* footnote 1, *supra*), makes the Act applicable to real property used or "expected to by used" as the residence of a person. Regulation Z, 12 C.F.R. § 226.2(y) defines residence:

> "Residence" means any real property in which the customer resides or expects to reside. The term includes a parcel of land on which the customer resides or expects to reside.

As discussed above, this is a question of fact.

■ Appellant next argues that a genuine issue of fact exists concerning whether it was a "creditor" within the meaning of the Act when it executed the contract with the Kovaliks. The term "creditor" is defined in 15 U.S.C. § 1602(f) to be:

> . . . [those] who *regularly* extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. (Emphasis added).

12 C.F.R. § 226.2(m) provides further that a creditor is one who extends or arranges for consumer credit regularly in the ordinary course of its business. The Act's right to rescind was not intended to apply to transactions with one who extends credit only in isolated instances. *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir. 1974).

■ Appellees' motion for partial summary judgment alleged that appellant regularly extended credit which was payable in

606

more than four installments. They supported their motion with a copy of their agreement with appellant. In its minute entry granting appellees' motion, the trial court stated that based on the contract there was no issue of fact as to whether appellant was a creditor. We feel that evidence of one credit transaction in which appellant retained a security interest in a lot does not establish that appellant regularly extended such credit in the ordinary course of business. We note, however, that between the trial court's minute entry ruling, and the time it entered a formal judgment granting partial summary judgment, appellant filed a motion to reconsider. In their response to appellant's motion, appellees attached copies of four separate agreements between appellant and other debtors in which appellant sold lots and retained security interests in them. In our opinion, these agreements establish that appellant regularly extended credit in the ordinary course of its business, and that it is a creditor within the meaning of the Act. Thus, if these exhibits were properly before the trial court, we would agree that whether appellant was a creditor is an undisputed issue. *See Eby v. Reb Realty, Inc., supra.*

The holding in *Insurance Agencies Co. v. Weaver,* 124 Ariz. 327, 604 P.2d 258 (1979), however, convinces us the four agreements could not have been properly considered by the trial court in granting the motion for partial summary judgment. *Weaver* holds that it was error for the trial court to grant summary judgment to defendant based on allegations in an affidavit attached to defendant's response to plaintiff's post-hearing memorandum. *Id.* at 259. The court stated:

> The minute entry of the trial court for the hearing on defendant's motion for summary judgment only indicates that plaintiff was ordered, at the hearing, to file a memorandum within five days. There was no order that either party should file any further supporting documents, and plaintiff could not have expected Ivan Weaver's affidavit.[2] At the

time that affidavit was filed, plaintiff had already submitted everything that the court had required of him. Under these circumstances, in considering defendants' motion for summary judgment, the trial court should not base its decision on the affidavit attached to defendants' post-hearing responsive memorandum.

*Id.* at 259. Thus, on remand, the trial court must also reconsider and determine whether appellant was a "creditor" at the time of the Kovalik transaction.

■ Appellant next contends that the trial court erred in ruling, as a matter of law, that appellees effectively rescinded the agreement on January 17, 1975. Appellant did not cite us to any finding by the trial judge in the record containing this ruling, nor does our review of the record reveal one. However, because rescission by appellees was a prerequisite to awarding damages under 15 U.S.C. § 1635, and because damages were awarded appellees, the trial judge must have found that appellees rescinded the contract. The record shows that appellant received appellees' notice of rescission on January 17, 1975; it contains the copy of a check drawn by Mrs. Kovalik on January 24, and received by appellant on January 27 as an installment payment for the lot; it also contains a letter dated February 13, 1975 from appellees' attorney to appellant, an affidavit by appellees' attorney attesting that he mailed the letter to Max Morgan, appellant's president; and it contains Max Morgan's affidavit that he did not receive a notice of rescission after January 27.

From the act by appellees of sending a notice of rescission and then sending appellant a subsequent contract payment, a trier of fact could reasonably infer that appellees intended to rescind but changed their minds and made the payment. Thus, the trial court erred by holding as a matter of law that rescission occurred on January 17. This is another fact question *sub judice.*

We now turn to the damages question in the second appeal. Appellant argues that

2. *See* Rule 56(e), Rules of Civil Procedure, 16 A.R.S.

even assuming it is liable under the Act, the trial court erred by granting appellees both rescission of the contract and a money judgment for the fair market value of the lot.

 Section 1635(b)[3] provides that within 10 days after receiving a notice of rescission, the creditor must return any money received from the debtor, and terminate the security interest. It is undisputed that appellant never performed either obligation. If on remand the Act is found to apply to the transaction *sub judice*, appellees will be entitled to rescission and a return of all their contract payments.

Section 1635(b) also provides that after the creditor terminates the security interest and returns the debtor's money, that the debtor must tender any property received from the creditor, or its reasonable value, if tender of the property is impractical. Then, if the creditor does not take possession of the property within 10 days of the debtor's tender, the creditor's interest in the property is forfeited, and the debtor keeps the property without paying for it. *Id.* Appellees argue, citing *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974), that appellant's failure to perform the duties enumerated above excused their duty to tender, and that they were therefore entitled to the fair market value of the lot, plus costs and interest. We disagree.

By the express language of § 1635(b), the creditor forfeiture provision applies only where the debtor *tenders*, and the creditor does not take possession in 10 days. *Sosa v. Fite, supra*, is not to the contrary. It holds that where the creditor does not perform its statutory duties upon receiving a notice of rescission, the debtor's duty to tender is discharged (not excused) by an unconditional offer to return the creditor's property accompanying the notice of rescission. *Id.* at 119. Sosa was awarded rescission and allowed to keep the property without paying for it because the creditor did not repossess the property within 10 days of the debtor's offer to return it. *Id.*

Here, however, appellees' notice of rescission states that they would only tender the lot after appellant returned their contract payments and paid a penalty of $1000 pursuant to 15 U.S.C. § 1640. This was a qualified tender demanding relief that they were not entitled to since the statute had already run on § 1640. In our opinion, this is an insufficient tender to discharge appellees' statutory tender obligation, and appellant should not be held to have forfeited its interest in the lot by not repossessing it within 10 days of receiving the qualified notice. Appellees were therefore not entitled to a judgment for the value of the lot.

For the foregoing reasons, the judgments of the trial court are reversed, and the case is remanded for further proceedings in accordance with this opinion.

HAIRE and FROEB, JJ., concur.