725 P.2d 501

**NORTHERN ARIZONA PROPERTIES, a Limited Partnership, Western Financial Management Corp., its General Partner, Plaintiffs-Appellants,**

**v.**

**PINETOP PROPERTIES GROUP, a General Partnership; Mike Newsome and Jane Doe Newsome, Husband and Wife; Dennis A. Kramer and Jane Doe Kramer, Husband and Wife; Shirley A. Kibler and John Doe Kibler, Husband and Wife; and Eric D. Kibler and Jane Doe Kibler, Husband and Wife; Transamerica Title Insurance Company, a California corporation and Sports Village Three Homeowners Association, Defendants-Appellees.**

**No. 1 CA–CIV 8452.**

Court of Appeals of Arizona, Division 1, Department C.

May 20, 1986.

Review Denied Sept. 16, 1986.

Parham & Cox by Michael A. Parham, Phoenix, for plaintiffs-appellants.

Storey & Ross by Lawrence E. Wilk, Dennis I. Wilenchik, Phoenix, for defendants-appellees.

EUBANK, Presiding Judge.

The single issue raised in this appeal is whether the trial court properly construed A.R.S. § 33–729(A) as precluding a defi-

ciency judgment in the foreclosure of a deed of trust as a mortgage.

Pinetop Properties Group (Pinetop), a partnership, purchased a condominium (condo), Unit 24–A, Sports Village Unit Three, located in Pinetop, Arizona, from Northern Properties (Northern). The condo consisted of three bedrooms and was situated in a building containing three other similar condo units. Northern sold the condo to Pinetop, receiving in exchange a promissory note for $25,176.41, payable monthly, which was secured by a deed of trust. In addition, Pinetop assumed a prior encumbrance against the condo which also required monthly payments. The Pinetop partners personally used the condo when it was not rented out to third parties. There is no dispute that the condo did produce some rental income for Pinetop. In January, 1984, Pinetop defaulted on the payments and in August, 1984, Northern filed this action to foreclose the deed of trust as a mortgage. The parties stipulated to the foreclosure of the deed of trust, but they disputed whether Northern was entitled to receive a deficiency judgment, in light of the statutory exemption (A.R.S. § 33–729(A)) claimed by Pinetop. The trial court ruled in favor of Pinetop on the exemption issue by summary judgment. The court also foreclosed Northern's trust deed. Northern appeals only from that part of the judgment that denied it a deficiency judgment. We affirm.

Northern contends that it is entitled to the deficiency judgment as authorized by A.R.S. § 33–727(A) because Pinetop is not entitled to the exemption provided by A.R.S. § 33–729(A). The statutory exemption reads:

Except as provided in subsection B, if a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of *a parcel of real property* of two and one-half acres or less *which is limited to and utilized for either a single one-family or single two-family dwelling*, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary. (Emphasis added).

A.R.S. § 33–729(A).

Northern argues that "dwelling," as used in the statute, should be defined as a permanent residence not held for investment. It further contends in its brief as follows:

... In order to be a dwelling, a property must constitute someone's permanent residence or normal place of abode. The apartment in this case is occupied at the most by the week, and usually by the week-end by vacationers. It is more like a motel suite in the nature of its use than a dwelling. It is most certainly *not* "limited to and utilized for" a dwelling. It is therefore not encompassed by the exception to deficiencies set forth in ARS § 33–729(A).

\* \* \* \* \* \*

... There is no question that the property at issue was designed for use as a dwelling. The question is whether the structure actually is being "utilized" as such. Plaintiff's position is that it has been held by defendants solely and exclusively for very short term transient occupancy, and this use does not constitute utilization as a dwelling.

In support of its argument, Northern cites thirteen cases selected from footnotes numbered 45, 57.1 and 99 of 28 C.J.S., *Dwelling* (3d reprint 1974) and the 1985 pocket part. These cases are cited without much in the way of analysis but generally do support Northern's argument. However, we note in reviewing the footnotes of this C.J.S. definition section, that Northern selected minority definition cases and that the majority of the cases do not define

"Dwelling" with the specificity that Northern argues for. An example is Northern's own citation of a part of the C.J.S. text which generally runs contrary to its argument.

> The term [Dwelling] is not free from ambiguity, but is one of multiple meanings. Many definitions have been given in adjudicated cases, and they are not entirely harmonious. It does not always have the same sense in all cases, for it may mean one thing under an indictment for burglary or arson, another under a homestead law, another under a pauper law, and another in a contract or devise.

28 C.J.S., *Dwelling*, at 599–600. The last word "devise" actually ends with a semicolon and, although not quoted, continues:

> ...; but the particular meaning intended to be expressed by it when used in a given instance, may be rendered obvious by the context or attendant circumstances; and usually resort must be had to those aids to interpretation to ascertain what is meant, and the usual line of demarcation has been the use to which the building is devoted as a habitation for man. In its broadest significance the word denotes a building used as a settled human abode; any building, edifice, or structure inclosed with walls and covered, whatever may be the materials used for building; and, in common parlance, when not qualified, conveys the notion of a home. It has been said that the character of a building or place as a dwelling is not necessarily affected by temporary absences therefrom, by the circumstances of size or cost, or kind of construction, or of the number of rooms occupied, or of the persons occupying them; although the term may be used in a qualified sense as referring to a building designed as a single dwelling to be used by one family. Also the term may be used as a description of realty. (Footnote references omitted).

*Id.* at 600.

Included in the C.J.S. footnotes, two Arizona Supreme Court cases are cited. The earliest is *Ainsworth v. Elder*, 40 Ariz. 71, 9 P.2d 1007 (1932). In *Elder* the court considered a restrictive covenant which restricted a subdivision lot to the erection of one residence costing not less than five thousand dollars. The appellant was enjoined from building a duplex on the lot. The Supreme Court analyzed several cases involving the definition of "residence" and "dwelling" and held that based on "the usual significance of the words in the locality where they are used" the covenant "prohibits the erection of a building for any purpose except occupancy by a single family for residence purposes and that a duplex ... is prohibited." *Id.* at 79, 9 P.2d at 1009. *Elder* is cited by Northern in support of its argument. Under the circumstances of *Elder*, the holding that "one residence" is synonymous with a "dwelling house" and excludes a duplex makes good sense. However, we do not see the case as defining "dwelling" in all other circumstances.

The other Arizona case cited in the footnotes, but not cited in the briefs, is *Smith v. Second Church of Christ, Scientist*, 87 Ariz. 400, 351 P.2d 1104 (1960). In *Smith* two restrictive covenants were involved. The 1913 covenant provided that the "grantee shall erect no dwellings on said land the cost of which shall be less than $4,000.00 each and ... that no barns, garages or other buildings whatsoever shall be erected on said land until after the construction of said dwellings shall be well under way." Our Supreme Court said: "A dwelling is, of course, a building suitable for residential purposes and does not include a Church." *Id.* at 405, 351 P.2d at 1107. Certainly, this definition runs contra to Northern's argument.

In *Lindus v. Northern Insurance Company of New York*, 103 Ariz. 160, 438 P.2d 311 (1968), our Supreme Court, interpreting an insurance policy clause covering "All premises where the Named Insured ... maintains a residence and includes private approaches and other premises and private approaches thereto for use in connection with said residence ...", said: "The word 'residence' in the context means the dwell-

ing or abode of the insured." *Id.* at 163, 438 P.2d at 314. This case illustrates the court's reliance on the context of the word (residence) and defining it within the context of the sentence and paragraphs where it is used. This case was not cited in the briefs.

Finally, in our case *Kovalik v. Delta Investment Corporation,* 125 Ariz. 602, 611 P.2d 955 (App.1980), we held, in part, that a "lot" in a mobile home park was not a "dwelling" within the Truth in Lending Act (15 U.S.C. §§ 1635, 1635(e)) clause exempting credit transactions involving "first lien against a dwelling to finance the acquisition of that dwelling" from the Act. In arriving at the conclusion we relied on the definition of a "dwelling" set forth in Regulation Z, 12 C.F.R. § 226.2(p):

> "Dwelling" means a residential-type structure which is real property and contains one or more family housing units, or a residential condominium unit wherever situated. 125 Ariz. at 605, 611 P.2d at 955.

This definition is useful in the context of the issue *sub judice.*

In response to Northern's contentions, Pinetop argues that the legislative intent expressed in A.R.S. § 33–729(A) is clear and unambiguous; that pursuant to A.R.S. § 1–213 "[W]ords and phrases shall be construed according to common and approved use of the language ..."; that "dwelling" is defined in Webster's Ninth New Collegiate Dictionary (1976) as: "a shelter (as a house or a building) in which people live" and similarly defined in the Uniform Building Code of 1982 and the One and Two-Family Dwelling Code (1979). Thus, Pinetop argues, no intention was expressed by the legislature to limit the definition of "Dwelling" to a person's principal abode, or to limit a "dwelling" to non-rental purposes. Finally, Pinetop points out that the restrictions governing the use of the condominiums specifically permit the lease or rental of any unit, subject only to the restrictions and bylaws of the Association.

■ We agree with Pinetop. "Dwelling" as used by the legislature in A.R.S. § 33–729(A) does not lend itself to the restrictive definition advanced by Northern. The Arizona cases cited above agree with the majority of jurisdictions in generally giving a broad definition to "dwelling", limited only by the context of its use. The A.R.S. § 33–729(A) exemption "which is limited to and utilized for either a single one-family or single two-family dwelling" does not require that the dwelling constitute someone's permanent residence or normal place of abode. Further, it does not preclude investment use such as occurred in this case. The statute simply does not address the contentions relied on by Northern. While we agree with Northern, that the legislature perhaps meant only to exclude deficiency judgments in foreclosure actions against a single family homeowner and not against an investment homeowner, the statute just does not say that. If Northern is correct in its surmise, only the legislature can correct the language of A.R.S. § 33–729(A) to preclude investment homeowners. (We also note in passing that no issue was raised, either in the trial court or here, regarding the applicability of the A.R.S. § 33–729(A) exemption to a three or more unit condominium. Thus, that issue is not before us and is not decided here).

■ Finally, the briefs assume that the mortgage foreclosure exemption § 33–729(A) applies to the foreclosure of a deed of trust rather than § 33–814(E), which also limits deficiency judgments in a deed of trust sale. While we agree, the lack of case authority requires us to examine the question. First, the deed of trust involved herein is a security transaction document authorized by A.R.S. § 33–801, *et seq.* It is not a mortgage (A.R.S. § 33–701, *et seq.*). However, pursuant to A.R.S. § 33–814(C), the beneficiary of the deed of trust is authorized to foreclose the deed "in the same *manner* as a real property mortgage" and when that election is made, the provisions

relating to mortgage foreclosure (A.R.S. § 33–721, *et seq.*) are applicable. A.R.S. § 33–807(A) and (B) contains the same authorization with slightly different and stronger language. It reads, in part:

> ... At the option of the beneficiary a trust deed may be foreclosed in the *manner* provided by law for the foreclosure of mortgages on real property in which event the provisions of chapter 6 of this title *govern* the proceedings. The beneficiary or trustee shall constitute the proper and complete party plaintiff in any action to foreclose a deed of trust. The power of sale may be exercised by the trustee without express provision therefor in the trust deed.
>
> B.  The trustee or beneficiary may file and maintain an action to foreclose a deed of trust at any time before the trust property has been sold under the power of sale. A sale of trust property under the power of sale shall not be held after an action to foreclose the deed of trust has been filed unless the foreclosure action has been dismissed. (Footnote omitted). (Emphasis added).

While the word "manner" might reasonably be limited to procedure, the use of the words "govern the proceedings" by the legislature, clearly shows its intent that A.R.S. § 33–729(A) would govern or control the foreclosure of a deed of trust as a mortgage. The phrase "govern the proceedings" was added in 1984 and constitutes the last word by the legislature. Laws 1984, ch. 121, § 10. Thus, reading §§ 33–814(C) and 33–807(A) and (B) together, the legislative intention is clear that when the election is made to foreclose a deed of trust as a mortgage, chapter 6 of title 33 A.R.S. (A.R.S. § 33–701, *et seq.*) controls. Thus, we agree with the position taken by both parties that § 33–729(A) is the controlling statute where the election is made to foreclose a deed of trust as a mortgage.

The judgment is affirmed.

SHELLEY and HAIRE, JJ., concur.