888 P.2d 1340

**W.D. LONG, Plaintiff–Appellee,**

v.

**Leo CORBET, Defendant–Appellant.**

**No. 1 CA–CV 92–0092.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 2, 1994.

Review Denied Feb. 22, 1995.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Henry L. Timmerman, Christopher Robbins and Jeffrey B. Smith, Phoenix, for appellee.

Kenneth L. Tucker & Associates by Douglas G. Wymore, Phoenix, for appellant.

## OPINION

NOYES, Judge.

This issue is whether a creditor who has received excess funds from a trustee's sale held by a senior creditor is precluded by Arizona's anti-deficiency statute, Ariz.Rev. Stat.Ann. ("A.R.S.") section 33–814(G), from pursuing a guarantor for satisfaction of the remainder of the debt. Because we conclude that the anti-deficiency statute does not apply in this situation, we affirm the trial court's grant of summary judgment to the creditor.

## FACTS AND PROCEDURAL HISTORY

In August 1985, Appellee W.D. Long ("Long") loaned $50,000 to Dominican Farming Enterprises, an Arizona limited partnership. In January 1986, the loan was increased to $55,000. The promissory note was secured by a deed of trust on a single family residence owned by Robert J. and Aloma Martinez ("Martinez"). The loan was also individually guaranteed by several individuals, including Appellant Leo Corbet ("Corbet"). After Dominican defaulted on the loan, Long filed the complaint that underlies this appeal. The complaint, which was filed on November 23, 1988, and named Dominican, Martinez, and the guarantors as defendants, sought judgment in the amount of $64,903.25 and judicial foreclosure of the Martinez residence. The only parties relevant to this appeal are Long and Corbet.

On January 19, 1990, while Long's complaint was pending, the Martinez house was sold at a trustee's sale unrelated to Long's complaint—the sale was noticed by the holder of a deed of trust that was senior to the one held by Long. The sale produced enough money to satisfy the full debt secured by the senior deed of trust, and there were excess funds of $30,040.92. The excess funds were deposited with the clerk of the superior court. Long then filed a separate cause of action, petitioning the court for release of the deposited funds to him. The petition was granted, and the funds were released to Long.

Corbet then filed a motion for summary judgment on Long's complaint in this case, arguing that by accepting the excess proceeds of the deed of trust sale of the Martinez residence, Long had elected payment on the debt by means of a non-judicial foreclosure of the property. Corbet asserted that, as a result of this election of remedy, Long was bound by the anti-deficiency provisions of A.R.S. section 33–814(G) and thus could not attempt to collect the remainder of the debt from Corbet. He also argued that Long was prohibited from recovering from Corbet because Long had failed to initiate an action for a deficiency judgment within 90 days after the trustee's sale.

Long also moved for summary judgment upon the undisputed fact that the loan agreement had been breached and that Corbet's guaranty was valid and enforceable. Long argued that because his loan was not a purchase money loan, the anti-deficiency statute did not apply. The statute, he argues, was intended to protect home purchasers, not guarantors of loans made for business ventures.

The trial court denied Corbet's motion for summary judgment and granted Long's motion. The court entered judgment against Corbet in the amount of $52,623.97, plus accruing interest. Pursuant to the guaranty, the court also awarded costs and attorneys' fees against Corbet. Following the court's denial of Corbet's motion for a new trial, Corbet timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (Supp. 1993).

## DISCUSSION

Corbet argues that A.R.S. section 33–814(G) applies to prohibit a deficiency judgment against him, citing *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1988), and *Mid Kansas Fed.Sav. and Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 804 P.2d 1310 (1991). He also asserts that the anti-deficiency protection applies to investors as well as homeowners and that it applies to guarantors through A.R.S. section 33–814(A). A.R.S. section 33–814(A) (Supp.1993) provides in relevant part:

> Except as provided in subsections F and G of this section, within ninety days after the date of sale of trust property under a trust deed pursuant to § 33–807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership.

Paragraph G of A.R.S. section 33–814 provides:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

Because Long chose to benefit from the trustee's sale noticed by another creditor, Corbet argues, Long is bound by the rules and limitations imposed by statute and case law on non-judicial foreclosures. Corbet also argues that because Long failed to file a deficiency action or to amend his ongoing action to recover a deficiency, the trial court erred in awarding a deficiency judgment to Long.

Long responds that, under *Baker*, he was entitled to waive his security once the trustee's sale eliminated his lien rights and to sue on the note and guaranty because the loan was a non-purchase money obligation. He further argues that accepting the excess proceeds from the trustee's sale initiated by a senior lienholder is not the same as instituting a non-judicial foreclosure action that triggers the application of the anti-deficiency statute. Long argues that his petition to recover the excess proceeds simply gave notice of his position as a junior lienholder and as the party entitled to the proceeds.

In *Baker*, the Arizona Supreme Court held that the holder of a promissory note secured by a deed of trust or mortgage could not make the debtor liable for the entire unpaid balance of the note by waiving the security and bringing an action on the note. 160 Ariz. at 104, 770 P.2d at 772. The *Baker* court reasoned that such an action on the note would circumvent the legislature's objective in enacting A.R.S. section 33–814(E), now section 33–814(G), which was to protect homeowners from personal liability for debts secured by trust deeds encumbering residential property of two and one-half acres or less used for a single-family or two-family dwelling. *Id.*

In a supplemental opinion in *Baker*, the court explained that A.R.S. section 33–814(G), the deed of trust anti-deficiency statute, is not limited to purchase money collateral, whereas A.R.S. section 33–729(A), the mortgage anti-deficiency statute, covers only purchase money mortgages. *Id.* at 106, 770 P.2d at 774. In addition, the court noted that under A.R.S. sections 33–807(A) and 33–814(D), now section 33–814(E), a deed of trust may be foreclosed in a court proceeding

as if it were a mortgage. *Id.* The court thus concluded that if a deed of trust holder chooses to foreclose judicially, it may seek a deficiency judgment if the residential collateral secures a non-purchase money note. *Id.* at 107, 770 P.2d at 775.

██ The deed of trust on the Martinez residence that was given to Long to secure his loan to Dominican was non-purchase money collateral. Long filed an action to judicially foreclose the deed of trust. Therefore, pursuant to A.R.S. section 33–814(E), the mortgage foreclosure statutes, A.R.S. section 33–721 *et seq.*, applied. *See Northern Ariz. Properties v. Pinetop Properties Group,* 151 Ariz. 9, 12–13, 725 P.2d 501, 504–05 (App.1986). Thus, Long would have been entitled to seek a deficiency judgment if the foreclosure sale did not produce sufficient proceeds to pay off the note.

██ However, before the judicial foreclosure action went to trial, a senior deed of trust holder on the Martinez residence held a non-judicial trustee's sale of the property. The other creditor's exercise of its non-judicial sale rights did not constitute an election by Long to exercise his non-judicial foreclosure right. *See Resolution Trust Corp. v. Segel,* 173 Ariz. 42, 46, 839 P.2d 462, 466 (App.1992). The issue in *Segel* was whether the plaintiff, a non-purchase money lender who made four loans secured by deeds of trust on residential property, could waive its security and sue on the notes. *Id.* at 42, 839 P.2d at 462. The plaintiff's deeds of trust were junior to first deeds of trust held by other lenders. *Id.* at 43, 839 P.2d at 463. The senior lenders scheduled trustee's sales of the residences, and the plaintiff sued the debtor to recover the amounts due on the promissory notes. *Id.*

The *Segel* court noted that, because the plaintiff did not institute the trustee's sales and the mortgage anti-deficiency statute did not prevent the plaintiff from obtaining a deficiency judgment against the debtor, the plaintiff could waive its security and sue on the notes pursuant to A.R.S. section 33–722.

*Id.* at 44–45, 839 P.2d at 464–65. Given this situation, the court concluded that under *Southwest Savings & Loan Association v. Ludi,* 122 Ariz. 226, 594 P.2d 92 (1979), the plaintiff's action on the second position notes constituted a wholly separate action that was unaffected by the senior lenders' proceedings. *Id.* at 46, 839 P.2d at 466. Thus, the plaintiff's right to elect remedies was not affected by other lenders' choices to hold trustee's sales, and the plaintiff could choose to waive its security. *Id.*

██ Once the creditor senior to Long sold the deed of trust property at a trustee's sale, Long's deed of trust was extinguished, although the debt secured by the deed of trust given to Long was not. *See Mid Kansas,* 167 Ariz. at 130, 804 P.2d at 1318. Under *Segel,* the senior creditor's election of non-judicial foreclosure did not define Long's remedies; Long had chosen to foreclose judicially, and he was still entitled to sue on the guaranty given by Corbet.

██ The situation before us, however, has an added twist because of the excess funds remaining after the senior creditor's trustee's sale. As a junior lienholder, Long was entitled to that money, and he went to court and got that money. Because Long benefitted from the non-judicial foreclosure of the collateral, the question, then, is whether Long could still sue the guarantor to collect the remainder of the debt owed by Dominican. In other words, by accepting the excess funds from the trustee's sale, did Long make an election to proceed by non-judicial foreclosure, thus giving up his right to recover from a guarantor the additional amount owing?

We do not find that Long's receipt of excess funds from the trustee's sale can be characterized as an election by Long to collect his debt by non-judicial foreclosure. In the complaint against Corbet and others, Long elected to proceed by judicial foreclosure so that he could also recover any deficiency from the guarantors. Because of an intervening trustee's sale over which

Long had no control, Long lost the opportunity to proceed with the judicial foreclosure. Although Long did receive the excess proceeds from the trustee's sale, his receipt of what remained from someone else's trustee sale cannot reasonably be said to have been an election of remedies by him. To so hold would put a creditor in the position of having to choose between accepting the excess funds with no recourse for any deficiency or refusing the excess funds and suing the guarantor for the entire unpaid debt. The latter option makes no sense; it deprives both the creditor and the guarantor of the benefit of those excess funds. Had Long done what Corbet argues he should have done, passed over the excess funds and sued Corbet for the entire unpaid debt, Corbet would then have a better complaint than his present one; he would complain that he, Corbet, should be given credit for the excess funds from the trustee's sale because Long could have and should have gone to court for an order releasing those funds to Long in reduction of the unpaid debt guaranteed by Corbet. Long having done just that, Corbet has already received all the benefit to which he is entitled from this fortuitous circumstance.

■ We also find that A.R.S. section 33–814(C) provides another explanation for why Arizona's statutory anti-deficiency scheme does not prevent creditor Long's action against guarantor Corbet. Section 33–814(C) provides:

> The obligation of a person who is not a trustor to pay, satisfy or purchase all or a part of the balance due on a contract secured by a trust deed may be enforced, if the person has so agreed, in an action regardless of whether a trustee's sale is held. If, however, a trustee's sale is held, the liability of a person who is not a trustor for the deficiency is determined pursuant to subsection A of this section and any judgment for the deficiency against the person shall be reduced in accordance with subsection A of this section. If any such action is commenced after a trustee's sale has been held, it is subject, in addition, to the ninety day time limitations of subsections A and B of this section.

Thus, if the creditor does not hold a trustee's sale, it may enforce the guaranty if the guarantor has agreed that the creditor need not hold a trustee's sale before recovering on the guaranty. *See Crown Life Ins. Co. v. Howard*, 170 Ariz. 130, 133, 822 P.2d 483, 486 (App.1991).

Although *Segel* did not reach the question of whether someone in Long's position would be bound by another creditor's trustee's sale, taking the *Segel* reasoning another step, we conclude that as to Long, there was no trustee's sale. There was no sale pursuant to Long's trust deed, nor did Long receive the proceeds directly from the sale. The excess funds were deposited with the clerk of the superior court, and Long had to prove to the court that he was entitled to the money as repayment on the loan.

In his guaranty, Corbet agreed that his obligation thereunder would not be affected or impaired if Long failed to exercise any other right, power, or remedy for recovery. He also agreed that Long was entitled to resort to Corbet for payment of any of the debt regardless of whether Long had resorted to any property securing the debt. Thus, Long was entitled to enforce his obligation against Corbet, who was not a trustor, because Corbet had so agreed. *See* A.R.S. section 33–814(C). Because no sale was held on Long's deed of trust, he was entitled to proceed against Corbet to collect the outstanding balance of the debt without regard to the statutes dealing with deficiency judgments. Thus, the deficiency and anti-deficiency provisions of A.R.S. section 33–814(A) and (G) did not apply to Long's action on Corbet's guaranty.

Our conclusion is consistent with the purpose of the anti-deficiency statutes. As our supreme court discussed in *Baker*, the anti-deficiency statutes for both mortgages and deeds of trust evince "the legislature's desire to protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price." 160 Ariz. at 101, 770 P.2d at 769.

The *Baker* court also read the anti-deficiency statutes as placing the risk of inadequate security for a home purchase on the mortgagee, who would be in a better position than the purchaser to know the true value of the property. *Id.* at 103, 770 P.2d at 771. It quoted the California Supreme Court to explain that the purpose of an anti-deficiency statute is to "discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were [also] burdened with personal liability." *Id.* (quoting *Spangler v. Memel,* 7 Cal.3d 603, 102 Cal. Rptr. 807, 812, 498 P.2d 1055, 1060 (1972)). The purpose of Arizona's anti-deficiency statutes is to protect "homeowners" from deficiency judgments. *Mid Kansas,* 167 Ariz. at 128, 804 P.2d at 1316; *see also Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.,* 166 Ariz. 500, at 504, 803 P.2d 911, at 915 (App.1990) (noting that anti-deficiency statute places risk of inadequate security on purchase money mortgagee because seller is in best position to know value of property).

Corbet did not own the residence given as security for the loan, nor did he have any other type of interest in it. The loan Corbet guaranteed was a business loan; it was not for the purchase of the home that was subject to the deed of trust. The anti-deficiency statutes were not intended to protect the assets of a guarantor such as Corbet.

Because we conclude that A.R.S. sections 33–814(A) and (G) do not apply in this case, we need not decide whether Long's action on the guaranty constituted a timely-filed action for a deficiency or whether Corbet was entitled to a determination of the fair market value of the Martinez property.

Long requests an award of attorneys' fees on appeal pursuant to the guaranty and to A.R.S. section 12–341.01 (1992). Corbet's guaranty provides that, in the event it is enforced by legal action, including proceedings in appellate courts, Corbet will pay all court costs and attorneys' fees incurred. We therefore award costs and attorneys' fees to Long in an amount to be determined pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

The grant of summary judgment to Long is affirmed.

WEISBERG, P.J., and EHRLICH, J., concur.