903 P.2d 1101

**WELLS FARGO CREDIT CORPO-
RATION, a California corpora-
tion, Plaintiff–Appellant,**

v.

**Donald L. TOLLIVER and Sheila Ann
Tolliver, husband and wife,
Defendants–Appellees.**

No. 1 CA–CV 93–0287.

Court of Appeals of Arizona,
Division 1, Department B.

May 30, 1995.

903 P.2d 1101

**STATE of Arizona, DEPARTMENT OF
ADMINISTRATIVE RISK MANAGE-
MENT DIVISION, Plaintiff–Appellee,**

v.

**UNIVERSITY PHYSICIANS, INC.,
Defendant–Appellant.**

No. CV–95–0060–PR.

Supreme Court of Arizona.

Sept. 29, 1995.

### ORDER

Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by Thomas K. Chenal, Bridget M. Gaughan, Phoenix, for plaintiff-appellant.

Plattner, Schneidman & Schneider, P.C. by David A. Craze, Jeff Schneidman, Phoenix, for defendants-appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Michael S. Rubin, Donna M. Somsky, Phoenix, for amicus curiae Arizona Bankers Ass'n.

## OPINION

LANKFORD, Judge.

Wells Fargo Credit Corporation ("Wells Fargo") appeals from the trial court's grant of summary judgment in favor of defendants Donald and Sheila Tolliver. This appeal presents the following issues:

1. Does either Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–1566 or section 33–814 preclude Wells Fargo from instituting an action on its promissory note after its lien had been extinguished by a trustee's sale conducted by a senior lienholder?

2. If section 12–1566 or 33–814 applies, did the trial court err in granting summary judgment in favor of the Tollivers?

3. Did the trial court err in denying Wells Fargo's motion for summary judgment?

We hold that neither section 12–1566 nor section 33–814 bars Wells Fargo from suing on its note after its junior lien had been extinguished when the senior lienholder instituted non-judicial foreclosure proceedings, and that Wells Fargo is entitled to summary judgment. Accordingly, we reverse the trial court's judgment in favor of the Tollivers and remand for entry of judgment in favor of Wells Fargo.

On appeal from summary judgment, both the facts and the record are to be viewed in the light most favorable to the losing party below. *Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980). Viewed in that light, the facts are as follows. The Tollivers executed a promissory note in favor of Wells Fargo as payee. The note was secured by a second deed of trust on an apartment complex. Wells Fargo's deed of

trust was junior to a first deed of trust held by Lomas Mortgage Corporation ("Lomas").

In September 1991, Lomas conducted a trustee's sale of the encumbered property. At the time, the amount owed Lomas totaled approximately $60,145.00, and the amount due Wells Fargo equalled $59,342.00.

Wells Fargo later brought this action against the Tollivers for the amount due under the promissory note. The parties filed cross-motions for summary judgment. The trial court denied Wells Fargo's motion for summary judgment and granted the Tollivers' motion. The court stated:

> THE COURT FINDS that A.R.S. § 12–1566(F) is applicable to the case at bar and that the second sentence in this paragraph would be rendered meaningless if plaintiff were allowed to release its recorded lien at this time. The Court believes that the Legislature intended for the junior lienholder to release its recorded lien at the time of the trustee sale conducted by the senior lienholder.

The court entered judgment for the Tollivers, thereby leaving Wells Fargo without recourse against the Tollivers for the $59,-342.00 debt. After its motion for reconsideration or a new trial was denied, Wells Fargo brought this appeal.

## I.

■ We must first determine whether A.R.S. section 12–1566 precludes Wells Fargo from initiating an action on its promissory note after its security interest had been foreclosed by a senior lienholder's trustee's sale. Because this issue involves statutory interpretation and application, it is a question of law that we review *de novo*. *See Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

■ In interpreting a statute, we look primarily to the language of the statute and give effect to the statutory terms according to their ordinary meanings, unless the legislature has provided a specific definition or the context of the statute indicates a term carries a special meaning. *Mid Kansas Fed. Sav. and Loan v. Dynamic Dev. Corp.*, 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991). If

the statutory language is clear and unambiguous, we will give effect to the statute's plain language without resorting to other rules of statutory construction. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

The Tollivers argue that section 12–1566 requires Wells Fargo, as a junior lienholder, to affirmatively release its lien on the property prior to the trustee's sale commenced by the senior lienholder before it can maintain a direct action on its note. The Tollivers rely specifically on section 12–1566(F), which provides:

> F. This section shall not abate, suspend or bar the right of the holder of a debt secured by real property to abandon and release the lien on the real property which secures the debt and proceed against any borrower or guarantor. Abandonment and release shall be evidenced by a recorded release of the lien.

Contrary to the Tollivers' contention, we believe subsection (F) was designed simply to reassure secured creditors that section 12–1566 does not interfere with their right to elect remedies.

Under Arizona law, creditors who hold promissory notes secured by real property have two remedies available when a debtor defaults on the obligation: (1) foreclose their security; or (2) elect to waive the security and sue directly on the promissory note. *See* A.R.S. § 33–722; *Darnell v. Denton*, 137 Ariz. 204, 206, 669 P.2d 981, 983 (App.1983). The creditors may foreclose their mortgages judicially under A.R.S. sections 33–725 and 33–727. Deeds of trust may be foreclosed through trustee's sale proceedings or judicially. *See* A.R.S. §§ 33–721 *et seq.* and 33–801 *et seq.*

In a judicial foreclosure proceeding, the court grants judgment in favor of the creditor for the amount due and orders the property sold to satisfy the judgment. If the sales price does not satisfy the judgment, the court issues a deficiency judgment against the debtor for the balance. In a non-judicial foreclosure proceeding, the creditor causes the encumbered property to be sold in a trustee's sale. *See* A.R.S. § 33–807. The

creditor may then obtain a deficiency judgment to the extent that the debt exceeds the sales price or the fair market value of the property, whichever is greater. *See* A.R.S. § 33–814(A).

In 1990, the legislature sought to protect debtors from excessive deficiency judgments resulting from the forced sales of the encumbered properties by adding section 12–1566 and amending sections 33–725, 33–727 and 33–814. Judgment debtors are now entitled to a credit against the judgment in the amount of the greater of either the fair market value of the real property sold or its sales price. *See* A.R.S. § 12–1566(B). They may apply to the court for a determination of the property's fair market value after it is sold in either judicial or non-judicial foreclosure proceedings. *See* A.R.S. § 12–1566(C).

The legislature has defined the scope of section 12–1566 as follows:

A. This section applies to execution upon real property under a *judgment obtained* pursuant to § 33–725 or obtained pursuant to § 33–814 or obtained against a guarantor or any other person directly or indirectly or contingently liable on a debt for which a judgment under § 33–725 or 33–814 *may be obtained.*

(Emphasis added). The statutory language clearly limits the application of this statute to the execution upon real property under a *judgment* obtained under three circumstances: (1) judicial foreclosure proceedings pursuant to section 33–725; (2) deficiency actions pursuant to section 33–814; or (3) against a guarantor or any other person directly, indirectly, or contingently liable on a debt for which a judicial foreclosure or deficiency judgment may be obtained. The provisions of section 12–1566 are thus relevant only when a deed of trust has been foreclosed *and the creditor has obtained or can obtain a deficiency judgment.*

However, the provision on which the Tollivers rely to support their argument, A.R.S. section 12–1566(F), does not address deficiency actions. This provision guarantees secured creditors who do not desire to undergo foreclosure proceedings that their right to an election of remedies under section 33–722 has not been abolished by section 12–1566. Specifically, subsection (F) provides that "[section 12–1566] *shall not abate, suspend or bar the right* of the holder of a debt secured by real property to abandon and release the lien on the real property which secures the debt and proceed against any borrower or guarantor."

By its language, this subsection merely reassures lienholders that the fair market value provisions *do not interfere with* their right to waive their liens and proceed against the debtors personally. If the lienholders make such an election, they must record the release of the liens. However, the statutory language does not indicate an intent to impose an *affirmative obligation* on a junior lienholder to release or abandon its lien simply because the senior lienholder had elected to foreclose on its security. The language that "Abandonment and release shall be evidenced by a recorded release of the lien" in subsection (F) merely clarifies that a release shall be recorded.

In fact, to find a requirement that the junior lienholder release its lien would result in an irrational construction of the statute. *See Dunn v. Industrial Comm'n*, 177 Ariz. 190, 195, 866 P.2d 858, 863 (1994) ("We must construe the statute to avoid irrational results"). When the senior lienholder forecloses on its lien through non-judicial proceedings, the junior lender's security interest becomes extinguished by operation of law. *See* A.R.S. § 33–811(C)[1]; *Long v. Corbet*, 181 Ariz. 153, 157, 888 P.2d 1340, 1344 (App. 1994). Consequently, the junior lender no longer has a security interest on the property. It therefore has no lien to "release."

---

1. A.R.S. section 33–811(C) provides:
   The trustee's deed shall operate to convey to the purchaser the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and of all persons claiming the trust property sold by or through them, including all interest or claim in the trust property acquired subsequent to the recording of the deed of trust and prior to the delivery of the trustee's deed. Such conveyance shall be absolute, without right of redemption and clear of all liens, claims or interests having a priority subordinate to the deed of trust.

Subsection (F) should not be interpreted to require the junior lender to "release" a lien which no longer exists.

The Tollivers contend that subsection (F) requires Wells Fargo to record a release of its lien *before* the sale in order to preserve its right to sue on the note. However, there is no purpose in requiring a junior lienholder to release its lien prior to the foreclosure sale because the sale will cause the lien to be lost by operation of law. We will not construe the statute to require an unnecessary act.

Moreover, this interpretation would be unjust to junior lienholders. If Wells Fargo were to release its lien prior to the trustee's sale, it would become a general unsecured creditor. If the debtors were to cure their default and reinstate the senior trust deed, Wells Fargo would needlessly forfeit its security. As an unsecured creditor, Wells Fargo might recover little or nothing on the debt. A lien on a later judgment in favor of Wells Fargo on its note could be subordinate to other secured creditors. Wells Fargo's plight is all the more unjust in light of the fact that neither the senior foreclosing lienholder nor the debtors are harmed by simply allowing the junior lien to be extinguished by operation of law at the trustee's sale.

On the other hand, if Wells Fargo were to decide not to release its lien prior to the trustee's sale (perhaps in the hope that the debtors would reinstate the senior lien), the Tollivers' interpretation would forfeit both the lien *and* the creditor's right to sue on the note. This result is intolerable because the debtors would receive a windfall and the creditor would be left without any means whatever to recover on the debt.

We believe subsection (F) was promulgated to preserve the existing right to sue on the note, not to abrogate it. Had the legislature intended to effectuate such a drastic change in the law governing secondary security interests, it would not have placed the provision in a limiting subsection in a statute which does not even affect actions on promissory notes.

The Tollivers' construction of section 12–1566 also conflicts with the opinions of other jurisdictions which have interpreted similar fair market value deficiency statutes. For example, in *City Consumer Services, Inc. v. Peters,* 815 P.2d 234 (Utah 1991), the Utah Supreme Court analyzed a deficiency statute which allowed the debtor whose property had been sold under a first deed of trust to apply a credit in the amount of the fair market value of the property against the debt. In holding that the statute did not bar a junior lienholder from pursuing its claim against the debtor personally, the court stated:

> A deficiency judgment ... demands a prior sale under the power of sale of a deed of trust or a foreclosure under the mortgage *by the creditor seeking the deficiency judgment.* There was no such sale or foreclosure in this case. True, there was a foreclosure under the first mortgage, but how should that affect the second, other than to diminish the security. *It is stretching [the fair market value deficiency statute] almost to the breaking point, and perhaps beyond, to say that foreclosure of the first mortgage affects the second so as to limit, and, in this case, destroy the creditor's rights.*

815 P.2d at 239, *quoting* Clifford, *Mortgages: Right of a Secured Purchase Money Mortgagee When a Foreclosure of the First Mortgage Exhausts the Security,* 4 Hasting L.J. 248, 252 (1955) (emphasis added).

Similarly, in *Roseleaf Corporation v. Chierighino,* 59 Cal.2d 35, 27 Cal.Rptr. 873, 378 P.2d 97 (1963), the California Supreme Court affirmed judgment for the junior lender whose security was rendered valueless by a trustee's sale instituted by the senior lender. The court stated the purpose of fair market value provisions as "to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies." 27 Cal.Rptr. at 875, 378 P.2d at 99. In excluding the junior lienholder from the application of the fair market value statute, the court explained:

> The position of a lienholder whose security is lost through a senior sale is different from that of a selling senior lienor. A selling lienor can make certain that the security brings an amount equal to his claim against the debtor or the fair market

value, which ever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. *Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing.*

27 Cal.Rptr. at 876, 378 P.2d at 100 (emphasis added).

We likewise decline to interpret section 12–1566(F) in a manner which would inflict considerable harm upon junior lenders like Wells Fargo. The reasonable interpretation of subsection (F) is that it preserves the right of a lienholder to elect to abandon its lien and pursue an action on its note. The senior creditor's "exercise of its non-judicial sale rights did not constitute an election by [Wells Fargo] to exercise [its] non-judicial foreclosure right." *Long v. Corbet,* 181 Ariz. at 157, 888 P.2d at 1344, *citing Resolution Trust Corp. v. Segel,* 173 Ariz. 42, 46, 839 P.2d 462, 466 (App.1992). Therefore, Wells Fargo was not required by section 12–1566(F) to record a release of its lien prior to the trustee's sale.

## II.

■ We must next determine whether the 90–day time limit of A.R.S. section 33–814 bars Wells Fargo from suing on its note. This statute provides for the recovery of a deficiency judgment after the encumbered property had been sold in a trustee's sale. *See* A.R.S. § 33–814(A). The deficiency action must be maintained within 90 days after the sale. *Id.* Deficiency judgments are limited to the total amount owed to the beneficiary less the fair market value of the trust property on the date of the sale or the sale price, whichever is higher. *Id.* If the trust

property is a residential dwelling, no deficiency action may be maintained. *See* A.R.S. § 33–814(G).[2]

The statute does not apply because Wells Fargo's action is on the note, not one for a deficiency. This Court has previously held that a junior lienholder who did not institute trustee's sale proceedings may waive its security and sue directly on its note, provided that it is not precluded by the antideficiency statutes[3] from obtaining a deficiency judgment against the debtor. *See Resolution Trust Corp. v. Segel, supra.* In *Segel,* the debtor executed four promissory notes in favor of Southwest, each secured by a second deed of trust on a residential property. When the debtor defaulted on notes secured by the first deeds of trust, the senior lender scheduled trustee's sales of the properties. After the properties had been sold, Southwest sued Segel to recover the amounts due on its notes. In concluding that Southwest was not precluded from suing directly on its notes, we reasoned:

> Southwest's right to elect remedies under A.R.S. section 33–722 was not affected by the actions of another lender who was unrelated to Southwest, and the trustee's sales noticed by the senior lender did not constitute a choice by Southwest to exercise its non-judicial foreclosure rights.

173 Ariz. at 46, 839 P.2d at 466. We have recently reaffirmed our holding in *Segel.* In *Long v. Corbet, supra,* we stated:

> The other creditor's exercise of its non-judicial sale rights did not constitute an election by Long to exercise his non-judicial foreclosure right.

181 Ariz. at 157, 888 P.2d at 1344.

Like the creditor in *Segel,* Wells Fargo was a junior lienholder who did not commence trustee's sale proceedings, and the encumbered property was neither a single one-family nor a single two-family dwelling. Therefore, the trustee's sale noticed by the senior lienholder did not constitute an election by Wells Fargo to exercise its non-

---

**2.** A.R.S. section 33–814(G) pertains to properties which are two and one-half acres or less and limited to and utilized for either a single one-family or a single two-family dwelling.

**3.** *See* A.R.S. §§ 33–729(A) and 33–814(G).

judicial foreclosure rights. Wells Fargo is thus not limited to a deficiency action, and may sue the Tollivers on the note. The action on the note is not a deficiency action and thus is not subject to the 90–day limitation.

### III.

Because we conclude that neither section 12–1566 nor section 33–814 precludes Wells Fargo from instituting a direct suit on its note, we hold that the trial court erred in granting summary judgment in favor of the Tollivers. In addition, the Tollivers did not dispute their breach of the terms of the promissory note or any other elements pertinent to Wells Fargo's claim. Because no genuine issue of material fact exists, we reverse the trial court's judgment and remand for entry of summary judgment in favor of Wells Fargo.

■ Wells Fargo has requested its attorney's fees pursuant to A.R.S. section 12–341.01, the provisions of its note, and Rule 21, Arizona Rules of Civil Appellate Procedure. Because Wells Fargo is the successful party on appeal, we grant its request for reasonable attorney's fees incurred in this Court and in the trial court. The amount will be fixed by this Court upon Wells Fargo's compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Reversed and remanded.

WEISBERG, J., and LEVI R. HAIRE, Judge, Retired,* concur.