16 P.3d 783

**Anant Kumar TRIPATI,**
**Plaintiff–Appellant,**

v.

**STATE of Arizona; ARIZONA DEPART-**
**MENT OF CORRECTIONS, an agency;**
**Terry L. Stewart, individually and in his**
**official capacity, Defendants–Appellees.**

No. 1 CA–CV 00–0263.

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 19, 2000.

Review Denied March 21, 2001.

Anant Kumar Tripati, Plaintiff–Appellant, Buckeye, In Propria Persona.

Janet A. Napolitano, Arizona Attorney General, By S. Christopher Copple, Assistant

Attorney General, Phoenix, Attorneys, for Defendants–Appellees.

## OPINION

TIMMER, Judge.

¶ 1 Anant Kumar Tripati, a prison inmate, filed a second amended complaint with the trial court alleging that appellees intentionally deprived him of personal property, including legal materials related to his conviction. Tripati appeals from the trial court's grant of appellees' motion to dismiss filed pursuant to Arizona Rules of Civil Procedure 12(b)(6). He raises several issues, two of which are dispositive: (1) whether he can maintain a tort action against the State and the Arizona Department of Corrections (collectively, the "State") that does not involve serious physical injury, and (2) whether he alleged a viable § 1983 claim against Terry L. Stewart sufficient to withstand a motion to dismiss. We resolve the first issue against Tripati and therefore affirm the judgment of dismissal of the second amended complaint as against the State. But we decide that Tripati stated a § 1983 claim against Stewart sufficient to survive a motion to dismiss. Consequently, we reverse the portion of the judgment dismissing that claim and remand for further proceedings.

## I. Dismissal under A.R.S. § 31–201.01(L)

¶ 2 The trial court granted the State's motion to dismiss Tripati's second amended complaint against the State because Arizona Revised Statutes Annotated ("A.R.S.") section 31–201.01(L) (1996) "precludes [Tripati] from bringing this action absent an allegation that he suffered serious physical injury or that his claim is authorized by a federal statute." Tripati argues that the trial court misinterpreted A.R.S. section 31–201.01(L) because section 31–201.01(F) makes clear that subsection (L) applies only to cases involving physical injury. We review the trial court's interpretation of these statutes *de novo. State v. Johnson,* 195 Ariz. 553, 554, ¶ 3, 991 P.2d 256, 257 (App.1999).

¶ 3 To determine legislative intent, we first review a statute's language. *Calmat of Arizona v. State ex rel. Miller,* 176 Ariz.

190, 193, 859 P.2d 1323, 1326 (1993). As Tripati contends, we must also construe section 31–201.01(L) in light of section 31–201.01(F). *Goulder v. Arizona Dep't of Transp.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) ("Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony."). The goal is to achieve consistency between the statutes. *See id.* at 416, 868 P.2d at 999.

¶ 4 Section 31–201.01(F) provides that "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." Section 31–201.01(L) then states that "[a] person who is convicted of a felony offense and who is incarcerated ... may not bring a cause of action seeking damages or equitable relief from the state ... for injuries suffered while in the custody of the state ... unless the complaint alleges specific facts from which the court may conclude that the plaintiff suffered serious physical injury or the claim is authorized by a federal statute."

¶ 5 Tripati initially argues that section 31–201.01(L) does not bar his claim because "injuries," as used in that subsection, necessarily means only "physical injuries." He contends that a broader definition of that term would cause that provision to conflict with section 31–201.01(F), which authorizes tort actions against the State. We reject Tripati's contention because he misconstrues section 31–201.01(F). By its plain language, that provision only specifies *who* may be named as a defendant in an inmate's lawsuit based on allegations of tortious acts by Department of Corrections ("ADOC") personnel; it does not authorize an inmate to file any particular type of tort action. Thus, interpreting section 31–201.01(L) as limiting all tort actions to ones involving serious physical injury does not create a conflict with subsection (F).

¶ 6 Tripati next argues that "injuries," as used in section 31–201.01(L), must refer to "physical injuries" because had the legislature intended a broader definition, it

would have specified that allowable *tort* actions must involve serious physical injury. Tripati is correct only if the term "injuries" cannot refer to non-physical tort injuries.

¶ 7 Neither section 31–201.01(L) nor any related statute defines "injury." Accordingly, we must construe the statute according to the "common and approved use of the language." A.R.S. § 1–213 (1995); *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995) (explaining that statutory language is the best indicator of legislative intent and we will give terms their ordinary meanings). Webster's defines "injury," in significant part, as "an act that damages or hurts," or a "violation of another's rights for which the law allows an action to recover damages." WEBSTER'S NEW COLLEGIATE DICTIONARY 623 (9th ed.1989). Black's Law Dictionary defines "injury" as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property ... [t]he invasion of any legally protected interest of another." BLACK'S LAW DICTIONARY 785 (6th ed.1990). Neither definition limits "injury" to "physical injury," and we decline to ascribe such a restrictive meaning to the term as used in section 31–201.01(L). Every viable tort claim involves an "injury." *See* RESTATEMENT (SECOND) OF TORTS § 7 cmt. a ("The word 'injury' is used throughout the Restatement of this Subject to denote the fact that there has been an invasion of a legally protected interest which, if it were the legal consequence of a tortious act, would entitle the person suffering the invasion to maintain an action of tort."). Thus, contrary to Tripati's contention, the legislature's use of the word "injuries" in subsection (L) does not evidence its intent to limit application of that provision to physical injuries.

¶ 8 Tripati finally argues that the State was barred by both "equity and unclean hands" from asserting section 31–201.01(L) as a defense to the second amended complaint because the State admitted losing Tripati's property and attempted to conceal its misconduct. But Tripati fails to cite any authority supporting his contention and we are not aware of any. The doctrine of "unclean hands" is an equitable *defense* to a claim seeking equitable relief. *Ayer v. Gen. Dynamics Corp.*, 128 Ariz. 324, 326, 625 P.2d 913, 915 (App.1980) (rejecting defense of "unclean hands" because plaintiff did not seek equitable relief). Tripati and not the State was the party asserting a claim for relief. Thus, the State was not barred by the doctrine of "unclean hands" from seeking dismissal of the second amended complaint pursuant to section 31–201.01(L).

¶ 9 We conclude that section 31–201.01(L) limits inmates' tort claims against the State to those involving serious physical injury or ones authorized by federal statute. Because Tripati did not allege that he incurred serious physical injury as a result of any action taken by ADOC personnel or that his claim is authorized by federal statute, the trial court correctly dismissed his second amended complaint against the State. In light of our holding, we need not reach the remainder of Tripati's arguments regarding his claim against the State.

## II. Failure to state a § 1983 claim

¶ 10 The trial court dismissed Tripati's complaint against Terry L. Stewart because Tripati failed to allege that Stewart was "personally involved" in the acts complained of, as required in order to maintain an action under 42 U.S.C. § 1983. Tripati argues that the trial court erred because he indeed alleged Stewart's personal involvement by claiming that (1) Stewart, as director of ADOC, is "responsible for the overall operations and policies of the department," (2) Stewart has implicitly approved the "custom and tradition" to lose inmate property and legal materials, (3) Stewart is aware of the widespread loss of such property within the prison but has refused to rectify the situation and is "deliberately indifferent," and (4) Stewart has failed to adequately train employees to prevent the loss of such property. Tripati concludes that Stewart's "inaction" was, in fact, "direct involvement" with Tripati's loss of property, thereby supporting his § 1983 claim.

¶ 11 The trial court correctly concluded that Tripati must allege personal participation by Stewart in the deprivation of

Tripati's constitutional rights in order to state a viable § 1983 claim. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Thus, Tripati's allegation that Stewart is responsible for ADOC operations is insufficient, by itself, to support a § 1983 claim. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (the mere right to control without any control or direction having been exercised is not enough to impose § 1983 liability); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996) ("Although [the inmate] does name the Warden and the Director of the Correctional facilities as defendants, supervisor status by itself is insufficient to support liability [under § 1983].").

¶ 12 The State argues that the trial court properly dismissed the § 1983 claim because Tripati failed to allege that Stewart "had any direct contact with [Tripati's] personal property or that Defendant Stewart personally lost his property." But the State ignores Tripati's allegations that Stewart approved a "custom and tradition" of losing prisoners' property, including legal materials pertinent to inmates' criminal cases, knew this policy resulted in "widespread" deprivations, and, with "deliberate indifference" failed to rectify the situation by adequate supervision or training. The State's motion to dismiss was not accompanied by affidavits or other evidence disputing these claims. We must therefore assume the truth of these allegations and view them in a light most favorable to Tripati in deciding whether they were sufficient to withstand a motion to dismiss. *Johnson v. McDonald*, 197 Ariz. 155, 157, ¶ 2, 3 P.3d 1075, 1077 (App.1999).

¶ 13 A supervisor is liable for constitutional violations of his subordinates only if the supervisor participated in or directed the violations, *or knew of the violations and with deliberate indifference failed to act to prevent them.* *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Taylor*, 880 F.2d at 1045; *see also Haynesworth v. Miller*, 820 F.2d 1245, 1261 (D.C.Cir.1987) (A supervisor who remains passive in the face of past constitutional violations about which he knew or should have known may be liable under § 1983.). Federal courts have thus recognized a cause of action under § 1983 when a plaintiff alleged that a supervisor's failure to train or to supervise personnel led to the deprivation of constitutional rights, or when a policy existed that led to the deprivation of such rights. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984). Accordingly, we reject the State's argument that Tripati must allege that Stewart had personal involvement with Tripati's lost property in order to maintain a § 1983 action.

¶ 14 The State next argues that Tripati failed to state a claim under § 1983 because he had an adequate state law remedy available to him—the prison grievance procedure.

> The United States Supreme Court has held that where a prisoner does not allege that a prison employee acted *pursuant to established state procedures*, an *"unauthorized* intentional deprivation of property. by a state employee does not constitute a violation of the procedural requirement of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available."

*Howland v. State*, 169 Ariz. 293, 296, 818 P.2d 1169, 1172 (App .1991) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)) (emphasis added). But Tripati alleges that prison employees intentionally deprived him of his property pursuant to "custom and tradition" sanctioned by Stewart. Viewing these allegations in a light most favorable to Tripati, we decide that he sufficiently alleged that prison employees acted "intentionally" and pursuant to "established state procedures." *See Turpin v. Mailet*, 619 F.2d 196, 201 (2nd Cir.1980) (holding that a supervisor may be held liable for a failure to remedy a known pattern of constitutionally offensive acts if the inaction gives rise to an official policy). Thus, we conclude, solely on the record before us, that a post-deprivation remedy is inadequate to satisfy the due process violation alleged by Tripati. *See id.; Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (post-deprivation remedies do not satisfy due process when

deprivation is caused by established state procedures).

¶ 15 We conclude that Tripati adequately pleaded a § 1983 claim against Stewart sufficient to survive a motion to dismiss filed pursuant to Arizona Rules of Civil Procedure 12(b)(6).

## Conclusion

¶ 16 For the foregoing reasons, we affirm the judgment of dismissal as against the State. However, we reverse that portion of the judgment dismissing the § 1983 claim against Stewart and remand for further proceedings.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SUSAN A. EHRLICH, Judge.