NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CINDY M., *Appellant*,

*v.*

CLAUDIO H., C.H., *Appellees*.

No. 1 CA-JV 20-0166
FILED 10-29-2020

Appeal from the Superior Court in Maricopa County
No. JS20123
The Honorable Eartha K. Washington, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Claudio H., Phoenix
*Appellee*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

**C R U Z**, Judge:

¶1          Cindy M. ("Mother") appeals the superior court's order terminating her parental relationship to her daughter, C.H.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          C.H. was born in May 2011, and is the biological daughter of Mother and Claudio H. ("Father").  Father, Mother, and C.H. lived together in paternal grandparents' house, along with Mother's other biological daughter, C.M.  However, less than a year after C.H.'s birth, the Department of Child Safety ("DCS") removed C.H. and C.M. from Mother and Father's home because of unexplained bruising on C.M.'s back and neck.  This bruising was later determined to be non-accidental and caused by Mother.

¶3          About a year later, DCS returned C.H. to Father's custody. Mother and Father had since separated, and while Father and C.H. continued to live in paternal grandparents' home, Mother moved to a residence a couple of streets away.  The superior court issued orders that gave Father sole legal decision-making authority and primary custody of C.H.  The court granted Mother visitation for four hours each Wednesday and Saturday.  The court's order stated that "[t]he parent whose parenting time is beginning will be responsible for picking up the child at the other parent's residence or the child's school."  The superior court directed the parents to use email as their primary method for communication regarding C.H., and it directed each parent to maintain and regularly review their email accounts.  Finally, the court ordered Mother to pay child support to Father for $100 per month.

¶4          Father began dating Stephanie H. in 2013, and in 2015, Father and C.H. moved out of paternal grandparents' home and into a home with Stephanie H.  However, Father still made C.H. available at the paternal grandparents' home for pickup by Mother during her visitation times, given Mother's close proximity and because that was the pickup location the parties had originally agreed.  In 2016, Father and Stephanie H. married. Although the exact date is disputed, the last time Mother had exercised her parenting time, saw, or spoke with C.H. was in the spring of 2016.

¶5          In 2019, Father filed a petition to terminate Mother's relationship to C.H., alleging abandonment, neglect/abuse, incapacity, and criminal conviction.  Father argued that Mother had failed to make any

contact with C.H. in two-and-a-half years, Mother had not paid any child support, Mother's intellectual functioning may place C.H. at risk, and Mother had previously been convicted of domestic violence. Father also contended that termination was in C.H.'s best interests because Mother "is incapable to parent [sic] [C.H.] and has no interest in supporting [C.H.]" and that Mother was "neglecting [C.H.] and not abiding by the court's orders." He also stated that a plan for adoption by Stephanie H. was in place.

¶6            Father was concerned Mother would now attempt to exercise her parenting time in response to his termination petition, so he sought to suspend Mother's visitation. The superior court shared Father's concerns that after years of no contact between Mother and C.H., unsupervised visits could be detrimental to C.H.'s physical, mental, or emotional health. In October 2019, the superior court modified Mother's visitation and granted her supervised visits on Monday evenings for two hours. A hearing was scheduled to discuss the topic of supervised visitation, but Mother did not attend. Mother did not participate in supervised visitations from the October 2019 order date through the severance hearing date held in March 2020.

¶7            Following the severance hearing, the superior court granted Father's petition because Mother had abandoned C.H. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶8            Although the right to custody of one's children is fundamental, it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To terminate a parental relationship, the superior court must make a two-part inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). First, the court must find by clear and convincing evidence at least one of the grounds for termination in A.R.S. § 8-533(B). *Id.* Second, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Id.*

¶9            "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). Accordingly, we accept the court's factual findings if reasonable evidence

supports them and will affirm its termination ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

I.      Statutory Ground of Abandonment

**¶10**        The superior court terminated Mother's relationship pursuant to A.R.S. § 8-533(B)(1), finding Mother abandoned C.H. Abandonment is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.   Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).  Whether a parent has abandoned her child requires an objective analysis of the parent's conduct, and it is not measured by a parent's subjective intent. *Michael J.*, 196 Ariz. at 249-50, ¶ 18.

**¶11**        The superior court found that Mother has not had a relationship with C.H. for four years.  Since 2016, Mother has not exercised her parenting time and has provided no cards, gifts, or letters to C.H. Mother was ordered to pay child support in 2014, but has not made any payments.   Although nonsupport alone is insufficient to establish abandonment, it is a factor to be considered.  When nonsupport is coupled with a failure to communicate or the absence of sending gifts, this court has upheld a determination that the child has been abandoned. *Yuma Cnty. Juv. Ct. Action No. J-87-119*, 161 Ariz. 537, 539 (App. 1989); *see also Maricopa Cnty. Juv. Action No. JS-3594*, 133 Ariz. 582, 586 (App. 1982).

**¶12**        Mother argues that the superior court erred in finding she abandoned C.H. because Father had blocked her access to the child in retaliation against Mother for telling Stephanie H. that Mother and Father engaged in an affair in 2016.  Mother claims that after Father and C.H. moved out of paternal grandparents' home, Father did not tell Mother his new address.  Mother further contends Father blocked her telephone number, blocked her on social media accounts, and refused to provide her with transportation, knowing she did not own a car.  Mother cites to *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), which found that a father had not abandoned his child where the mother had prevented the father from having more involvement in their child's life.

4

¶13        However, Father denied that he prevented Mother from visiting with C.H. because Mother told Stephanie H. about the affair. Father testified he did not block Mother from social media accounts and his telephone number until 2017, and it was in response to Mother sending him harassing messages that had nothing to do with visiting C.H. Additionally, in its custody and legal decision-making orders, the court ordered the two parties to communicate through email, and Father testified that he did not block Mother from sending him emails. Mother admitted that she never attempted to communicate with Father through email. Although Mother denied knowing Father's email address, it was provided to the parties by the court in a parenting conference report.

¶14        Father also testified that he made sure C.H. was ready to be picked up and available to Mother on all of Mother's visitation days from 2016 through the time of the termination hearing, but Mother failed to take advantage of her parenting time. Mother claimed she did not know Father's address after he moved, but the address was provided in court documents. Regardless, Father stated that he had continued to make C.H. available for pickup at the paternal grandparents' home, and Mother conceded that she never went to the grandparents' home during her visitation hours to pick up C.H. since early 2016. Although Mother argues she did not have a car, and Father refused to provide her transportation, this was not Father's responsibility. The court documents make it clear that transportation was Mother's responsibility. Mother also lived only a couple of blocks away from the paternal grandparents' house, and she testified that in the past she would walk to the paternal grandparents' home to pick up C.H. during her visitation hours.

¶15        Additionally, there was testimony that from 2014 through 2016, before the period in which Mother alleges Father blocked her access to C.H., Mother's visits with C.H. were "sporadic." There was further testimony that in August 2016, Father and Stephanie H. offered Mother additional parenting time, but Mother never took advantage of this offer. Mother also failed to exercise supervised visits she was granted in October 2019 and failed to attend a hearing on visitation, even though she knew the termination petition was pending. Mother claimed there were no available openings at the visitation centers she contacted, and she was placed on a waiting list, although she did not provide supporting evidence. And according to her testimony, Mother did not put herself on a waiting list until two months after the court ordered supervised visitations.

¶16        Although Mother argues that *Calvin B.* controls here, the facts in *Calvin B.* differ from this case. In *Calvin B.*, the father had filed multiple

petitions to increase his parenting time. *Id.* at 297, ¶ 22. The mother in *Calvin B.* admitted to canceling some of the father's visitations, and the court found she had violated a court order by preventing the father from contacting their child. *Id.* at ¶ 24.

**¶17** Here, the superior court found "[t]here was no evidence presented that showed that either Father or his wife ever prevented Mother from seeing the child." Father testified that he made C.H. available to Mother during her visitation hours, and Mother never showed. Although Father admitted to blocking Mother on his phone and social media accounts, the parties were ordered to communicate about C.H. through email, and Father left this channel of communication open. Even if Mother believed Father was trying to prevent her from contacting C.H., Mother did not seek court orders regarding visitation with C.H., and there was no evidence that she took any actions to enforce her parenting rights.

**¶18** "The burden to act as a parent rests with the parent, who should assert [her] legal rights at the first and every opportunity." *Michael J.*, 196 Ariz. at 251, ¶ 25. When circumstances prevent traditional means of bonding with a child, a parent "must act persistently to establish the relationship however possible" and "must vigorously assert [her] legal rights to the extent necessary." *Id.* at 250, ¶ 22 (quoting *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994)). For four years, Mother failed to take any meaningful actions to maintain a relationship with C.H.[1]

**¶19** Finally, Mother argues this matter should instead "be addressed through the capable hands of the family court." But Father was statutorily authorized to seek termination pursuant to A.R.S. § 8-533(A) ("Any person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative . . . may file a petition for the termination of the parent-child relationship . . . ."). The superior court did not err in entertaining the petition to terminate Mother's parental relationship or in finding Mother abandoned C.H.

---

[1] In passing, Mother argues that because Father allegedly denied her access to C.H., he is barred from seeking termination under the doctrine of "unclean hands." However, the doctrine of "unclean hands is an equitable defense to a claim seeking equitable relief," and it is not relevant here. *See Tripati v. State*, 199 Ariz. 222, 225, ¶ 8 (App. 2000) (internal quotation marks and citation omitted) (emphasis omitted).

II.     Best Interests

¶20     Mother also argues the superior court erred in finding termination was in C.H.'s best interests.  Termination is in a child's best interests if the child will benefit from severance, or the child will be harmed if the court denies it.  *Alma S.*, 245 Ariz. at 150, ¶ 13.  Factors that support a finding the child would benefit from severance include the availability of an adoption plan, a child's adoptability, and whether an existing placement is meeting the child's needs.  *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013); *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

¶21     The superior court found that C.H. would benefit from termination because Stephanie H. wished to adopt C.H.  The superior court found that Stephanie H. had been an active part of C.H.'s life for the past several years, C.H. calls Stephanie H. "mom," and C.H. and Stephanie H. "have a close and loving bond."  Mother argues that the adoption plan does not demonstrate termination is in C.H.'s best interests because Stephanie H. also testified that her relationship with C.H. would not change if she were unable to adopt.  While Stephanie H. testified that she would continue to maintain a relationship with C.H., even if the termination was not granted, the superior court noted that adoption would provide C.H. with permanency and stability if anything were to happen to Father.

¶22     Mother also argues that termination is not in C.H.'s best interests because C.H. would be deprived of a sibling relationship with Mother's other biological children.  The existence of a bond between biological family members, "although a factor to consider, is not dispositive in addressing best interests."  *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).  Here, however, C.H. has not seen C.M. in several years, and C.H. has never met Mother's other biological children.  The superior court did not err in finding that severance was in C.H.'s best interests.

**CONCLUSION**

¶23     For the foregoing reasons, we affirm.

